UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

DOMINICA MANAGEMENT, INC.,

               Plaintiff,              **AFFIDAVIT**

      -against-               File No.

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE, NEAL S.
SIMON and SOL WELTMAN,

               Defendants.

-----------------------------------X
STATE OF NEW JERSEY)
                  ss.:
COUNTY OF MIDDLESEX)

JOHN T. ST. JAMES, being duly sworn, deposes and says:

1.     I am Vice President and Chief Financial Officer of plaintiff Dominica Management Inc. ("DMI"). I make this affidavit in support of DMI's motion for an order granting expedited discovery as a prelude to a motion by DMI for a preliminary injunction. This motion also seeks a preliminary injunction and a temporary restraining order directing that defendants preserve all records, data and information relevant to this action. The exact relief sought on this motion is set forth below in paragraphs 22 and 23 of this affidavit.

## DOMINICA MANAGEMENT, INC.

2.      DMI is a New York corporation which maintains its principal office at 499 Thornall Street, Edison, New Jersey 08837.

3.      DMI by contract provides administrative services to Ross University School of Medicine ("Ross University") in the United States.  DMI and Ross University are related corporations.

## ROSS UNIVERSITY SCHOOL OF MEDICINE

4.      Ross University in turn is a medical school located on the island of Dominica, West Indies.  It was founded in 1978 and is accredited by the Dominica Medical Board, which has been deemed to have accreditation standards comparable to United States standards by the National Committee on Foreign Medical Education and Accreditation of the United States Department of Education.

5.      Ross University provides a first-class medical education for qualified applicants at its medical school in Dominica and at 41 hospitals in the United States that are its clinical affiliates.

6.      During its 26 year history, over 4,000 Ross University graduates have entered United States medical residencies practicing in every specialty in medicine, including programs at all of the major academic medical centers in the United States.

## ADMINISTRATIVE SERVICES PROVIDED BY DMI

7.      In providing administrative services for Ross University, DMI provides a number of specific services, among which are:

   a.   creating and publishing student handbooks, catalogues and other printed materials;

   b.   compiling information and creating computer services that are used in the administration of the affairs of Ross University, and which give DMI and Ross University distinct advantages over their competitors; and

   c.   originating and maintaining confidential and proprietary business information and trade secrets, all to be used for the benefit of Ross University.

## AMERICAN UNIVERSITY OF ANTIGUA

8.      American University of Antigua ("AUA") is a newly-formed foreign medical school chartered in 2001 by the island nation of Antigua and is located on that island. AUA, which conducted its first classes in February, 2004, is in competition with Ross University in providing medical school education to students.  AUA maintains a place of business in the United States at Suite 1600, 501 Fifth Avenue, New York, New York 10017.

## NEAL S. SIMON

9.      Defendant Neal S. Simon ("Simon") is a former employee and officer of Ross University, serving from 1989 through December 16, 2002.  During that period Simon served as President and General Counsel of Ross University.

10.      From December 16, 2002 to May 16, 2003, Simon was employed by DMI, voluntarily terminating his DMI employment on the latter date.

11.      It is my understanding that sometime after leaving DMI's employ, Simon became employed by AUA as its President and continues to serve in that capacity.

12.      During his tenure at both Ross University and at DMI, Simon had access to the confidential and proprietary

4

business information of those organizations, as well as their trade secrets.  In fact, when Simon terminated his employment with DMI, he signed a General Release Agreement which recognizes in paragraph 4 his "continuing confidentiality obligations to DMI and Ross University" which included the prohibition against disclosing:

> ...any confidential information
> concerning the business, clients or
> affairs of DMI or Ross University or
> any subsidiary or affiliate thereof.

A copy of that General Release Agreement is attached hereto, marked Exhibit "A".  As damages in the event that he breached the confidentiality provisions of that agreement, Simon agreed that he would be required to forfeit the sum of $400,000.00 previously paid him.  See paragraph 4 of the aforementioned General Release Agreement (Exhibit "A") and paragraph 6 of the December 16, 2002 Employment Continuation and Release Agreement, a copy of which is attached hereto, marked Exhibit "B".

### Misappropriation of Confidential and Proprietary Information and Trade Secrets

13.      DMI's management has learned since March, 2004 that after Simon left DMI's employ to work at AUA, he began a major effort to contact a number of DMI employees who

5

continued to work for Ross University in order to obtain from them confidential and proprietary information and trade secrets of DMI. Such information and trade secrets would enable AUA to "jump-start" its operations and to obtain the benefit of the systems and information that took DMI years and millions of dollars to develop. It is interesting to note that in the two instances discussed below, Simon not only relied on his friendship with these two individuals to obtain that information, he also held out the prospect of employment at AUA as an additional incentive for their cooperation.

14.     At this point from its limited available sources, and prior to conducting any discovery, DMI's management has learned that Simon and AUA improperly contacted two DMI employees for the express purpose of enticing from them critical confidential and proprietary information and trade secrets. Those two employees, one of whom was terminated by DMI for cause, are Sol Weltman and John Kramer.

### Sol Weltman

15.     Sol Weltman ("Weltman") was employed by DMI as a computer programmer from November 6, 1996 through April 29, 2004 when he was terminated for cause.

16.  As a computer programmer, Weltman had access to the computer systems used by DMI that related to and covered the management and affairs of Ross University.  Those computer systems, certain functions of which are to manage and maintain student and financial records for Ross University, are valuable trade secrets of DMI.

17.      An investigation of the information contained in the DMI laptop computer assigned to Weltman revealed that, while he was an employee of DMI and during his working hours, Weltman prepared and submitted to Simon at Simon's request written proposals for the creation and implementation of computer systems for AUA:

   a.  The first document chronologically is a four page document entitled:

> Proposal for Professional Services Relating
> to Implementation and Technical Support of
> Computer Systems and Applications to
> American University of Antigua from Sol
> Weltman

At page 2 of that document, a copy of which is attached hereto, marked Exhibit "C", Weltman lists eight specific areas and states that they:

> are several of the broad IT areas
> where, in the presenter's opinion,
> based on seven years experience at Ross
> University, upon which successful

> management of a high quality for-profit
> Medical School will depend.  (emphasis
> added)

With respect to the value of the programs that Weltman

was proposing to furnish AUA, all of which were derived

from his DMI employment for Ross University, Weltman at

page 3 of that same document stated:

> While such systems can be purchased
> "off the shelf" from reputable software
> companies with price tags of $250,000
> and up, it has been found that each of
> these offerings has limitations
> requiring some form of customization
> ...For a startup school with limited
> capital, it makes better sense to
> create a system starting with basic
> needs and adding capabilities as
> required.

b.  The next relevant document from Weltman is an

October 9, 2003 six page proposal bearing the title:

> General   Proposal   for   Professional
> Services Relating to Implementation and
> Technical  Support  of  Computer  Systems
> and  Applications  presented  to  American
> University of Antigua by Sol Weltman

This document provides more detail as to the computer

systems being offered by Weltman to Simon and AUA.   For

example, in paragraphs (a) through (l) on page 3, Weltman

describes in detail each of the elements contained within

the   student   information   system   developed   by   DMI   for

8

retaining and managing Ross University student information. A copy of this document is attached hereto, marked Exhibit "D".

c.  The proposal was updated in a revised document dated November 9, 2003, a copy of which is attached hereto, marked Exhibit "E".

d.  Attached hereto, marked Exhibit "F", is a copy of a January 2, 2004 letter from Weltman to Harvey Marshak and Simon, both of AUA.  In this letter, Weltman expresses some degree of frustration with the fact that his retention by AUA was being delayed and notes the following:

1.  Even though he was a paid employee of DMI at the time, the three of them, i.e., Weltman, Simon and Marshak, can "capitalize on some free time I'll (Weltman) have within the next two weeks."

2.  Weltman had previously provided work for AUA that "was suspended" and during the course of that work "had developed some material important to the specifications for the Student Information System."

e. Attached hereto, marked Exhibit "G", is a copy of a February 22, 2004 letter from Weltman to Harvey Marshak of AUA setting forth in detail the services that Weltman was performing for AUA during the prior few months.  At page 3 of that letter, Weltman advises Marshak of the experience that Ross University has been having with respect to its own "Prospects Tracking System."

f. Attached hereto, marked Exhibit "H", is a Report dated April 7, 2004 to AUA from Weltman stating that the "Prospects Tracking System" was implemented at AUA.  The "Prospects Tracking System" is the name of a computer program created exclusively for DMI.

### John Kramer

18.      The results of the examination of the information contained in Weltman's laptop computer led to a similar examination of the computers assigned to certain other DMI employees, among whom was John Kramer ("Kramer"), who serves as Compliance Officer/Clinical Science and Accreditation Specialist for DMI.  That limited examination revealed the following improper contacts between Simon and AUA on the one hand and Kramer on the other:

a.     Attached hereto, marked Exhibit "I", is a copy of an e-mail, dated January 30, 2004, from Kramer to Simon and Karen Kowit, an AUA employee, forwarding to them a copy of a contract that Ross University's attorneys had prepared at a substantial cost to cover the employment relationship with its Provost.  The contract was an attachment to the messages and will be submitted to the Court on request.  The messages also refer to ongoing discussions between Simon and Kramer about Kramer's "future possibilities" with AUA.

b.     Attached hereto, marked Exhibit "J", is a copy of an e-mail dated March 8, 2004 through which Kramer advises Nancy Perri, M.D., Ross University's Vice President of Academic Affairs, of the steps being taken by DMI and Ross University to deal with "recent difficulties with the TSBME" (the Texas State Board of Medical Examiners).  Simon is listed in the message as the recipient of a "BCC" or blind copy, showing that neither Kramer nor Simon wanted Dr. Perri to

know that the information being transmitted to her was also being sent to Simon.

c.   Attached hereto, marked Exhibit "K", are a series of e-mails dated February 12, 2004 between Kramer and A. Lutfey of AUA in which certain Ross University reorganization plans are discussed. Kramer advises that:

> Neal's [Simon's] partner is supposed to get in touch with me sometime this week, in order to discuss my future with American University of Antigua's College of Medicine.

19.      This last group of documents was only recently obtained in August, 2004 as a result of the examination by the firm of Sobel & Co. of the computer assigned by DMI to Kramer. This is explained more fully in the accompanying affidavit of Robert O'Leary of Sobel & Co.

### AUA Contact with Ross University Applicants

20.      The limited investigation that DMI was able to conduct to date reveals that, not only were Simon and AUA improperly contacting DMI employees to entice them to reveal confidential and proprietary information, they were also making improper contacts with Ross University's

medical school applicants based on information that had to have been tortiously obtained from DMI. Annexed hereto is an affidavit from Susan Corrado, an investigator from Sobel & Co., LLC, attesting to the fact that a medical school applicant who was rejected by Ross University was subsequently contacted by an AUA recruiter. The AUA recruiter began the conversation with a statement that the AUA recruiter was aware of the adverse action that had been taken by Ross University.

21.      This theft of DMI's confidential and proprietary information and trade secrets is especially reprehensible because, on the one hand, it allows AUA to obtain free-of-charge a list of people interested in attending medical school, but it also involves a serious breach of the most confidential information, i.e., the rejection of a medical school application. Ross University and DMI take major steps to keep the Ross University applications, as well as the actions taken on those applications, strictly confidential. It is shocking that such information has been obtained by AUA and used for its own benefit.

13

## Relief Requested

22.        The limited investigation conducted to date

reveals a pattern of improper and illegal contacts by Simon

and AUA with DMI employees designed to obtain DMI's

confidential and proprietary information and trade secrets.

DMI asks this Court to order immediate and expedited

discovery encompassing:

1.    The deposition of defendant Simon regarding all
      instances in which Simon and AUA obtained
      information regarding Ross University and its
      current or prospective students, including but
      not limited to the methods used to obtain such
      information whether oral or written, the subject
      matter of the information sought and obtained,
      and the names of the current or former employees
      of DMI from which the information was obtained.
      Plaintiff also seeks to obtain information from
      Simon regarding his dealings with defendant
      Weltman and any information regarding the
      computer system/programs used or currently in use
      since April, 2004 by AUA to manage student
      affairs and financial affairs.

2.    The deposition of defendant Weltman regarding his
      dealings with AUA and Simon during his employment
      with DMI including, but not limited to, the
      Proposals referred to in this affidavit and any
      information regarding any computer system/program
      created by Weltman for AUA or any other
      institution to manage student affairs and
      financial affairs.

3.    The deposition of John Kramer regarding his
      dealings with AUA and Simon since Simon left Ross
      University and DMI's employ.

14

    4.      Access by plaintiff's expert to the computer programs of AUA regarding the management of student affairs and financial affairs used or currently in use since April, 2004, including but not limited to, the source code of all releases up to and including the most recent release of said source code, internal alpha and beta builds of said source code, the compiled versions of said source code and access to client server set-ups that facilitate the running of the aforementioned programs.

23.      Because of the danger that important information and documents can be destroyed or otherwise lost by AUA, whether intentionally or not, DMI also asks the Court to issue a temporary restraining order and preliminary injunction directing that defendants preserve all computer systems, removable electronic media and other locations, including, but not limited to, e-mail and other electronic communication, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, Internet usage files, and network access information, and to discontinue all data destruction and backup tape recycling policies.

24.     No previous application has been made to this Court or any other Court for the relief requested in this motion.

_____
                                    JOHN T. ST. JAMES

Sworn to before me this
21ᵗʰ Day of September, 2004

_____
        Notary Public

**JESSICA M. PETERSEN**
**ID # 2319179**
**NOTARY PUBLIC OF NEW JERSEY**
**Commission Expires 9/7/2009**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

DOMINICA MANAGEMENT, INC.,

               Plaintiff,          **AFFIDAVIT**

      -against-           File No.

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE, NEAL S.
SIMON and SOL WELTMAN,

             Defendants.

-----------------------------------X
STATE OF NEW YORK)
               ss.:
COUNTY OF NASSAU)

     JENNIFER A. MCLAUGHLIN, being duly sworn, deposes and says:

1.   I am an attorney at law associated with the law firm of Cullen and Dykman Bleakley Platt LLP.   I am admitted to practice before this Court.   I make this affidavit in support of DMI's motion for an order granting expedited discovery as a prelude to a motion by DMI for a preliminary injunction and in support of plaintiff's motion for a preliminary injunction and a temporary restraining order directing that defendants preserve all records, data and information relevant to this action.   I submit this affidavit for the following limited purposes.

2.    I attach hereto as Exhibit "L" plaintiff's first request for the production of the documents of which plaintiff seeks expedited review.

3.    I attach hereto as Exhibit "M" deposition notices of Neal S. Simon, Sol Weltman and John Kramer.

4.    I also note that certain proprietary information concerning plaintiff has been redacted from Exhibit "J" attached to the St. James affidavit.

5.    Finally, in the event that the Court requires the Plaintiff to post a bond, it should be noted that the injunctive relief sought is to prevent defendant from destroying documents and information relevant to this case.   Thus, the harm that defendants may suffer in preserving the documents and information is minimal and the amount of the bond should reflect this risk accordingly.

6.    A copy of the Complaint in this action is attached hereto as Exhibit "N".

7.    No previous application has been made to this Court or any other Court for the relief requested in this motion.

_____

Jennifer A. McLaughlin  (JM 5678)


Sworn to before me this
28th Day of September, 2004

_____

LENORE I. ZIFF
Notary Public, State of New York
No. 01ZI4924964
Qualified in Nassau County
Commission Expires April 4, 20 06

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

DOMINICA MANAGEMENT, INC.,

               Plaintiff,              **<u>AFFIDAVIT</u>**

     -against-

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE, NEAL S.
SIMON and SOL WELTMAN,

             Defendants.

-----------------------------------X
STATE OF LOUISIANA)
                 ss.:
COUNTY OF ORLEANS )

    ROBERT O'LEARY, being duly sworn, deposes and says:

1.    I am employed as a Senior Consultant for Sobel &Co., LLC ("Sobel").  Sobel was retained by Cullen and Dykman Bleakley Platt LLP on behalf of its client Ross University School of Medicine ("Ross University") to conduct computer forensics with respect to computers used by plaintiffs' ("DMI") employees.

2.    I reviewed the hard drives of the DMI computers used by John Kramer and Sol Weltman while employed with DMI.

3.    To review the hard drives, I first made a bit-by-bit duplicate of the hard drives.  That effort maintains

the integrity of the original hard drives.

4.      Using   forensic   tools,   I   conducted   keyword
searches  on  the  duplicate  copies  of  the  hard  drives.   The
search  terms  I  used  included  phone  numbers  of  Neal  Simon
and  the  names  "Neal  Simon"  and  "AUA"

5.      The  e-mails  and  attachments  annexed  to  the  St.
James  affidavit  were  uncovered  as  a  result  of  this  process.


                                        ROBERT O'LEARY



Sworn to before me this
27ᵗʰ day of September, 2004.

_____
Notary Public

**JOHN A. MARZULLO**
**NOTARY PUBLIC**
**STATE OF LOUISIANA, PARISH OF ORLEANS**
**MY COMMISSION IS ISSUED FOR LIFE.**
**NOTARIAL # 68871**


2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

DOMINICA MANAGEMENT, INC.,

          Plaintiff,         **AFFIDAVIT**

     -against-

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE, NEAL S.
SIMON and SOL WELTMAN,

          Defendants.

----------------------------------X
STATE OF NEW JERSEY)
              ss.:
COUNTY OF WARREN   )

    SUSAN A. CORRADO, being duly sworn, deposes and says:

1.    I am an attorney at law admitted in the State of New Jersey and employed as a Senior Associate of Investigations for Sobel &Co., LLC ("Sobel").  Sobel was retained by Cullen and Dykman Bleakley Platt LLP on behalf of its client Ross University School of Medicine ("Ross University") to conduct an investigation concerning American University of Antigua's ("A.U.A.") contact with Ross University applicants.

2.    I began my investigation by interviewing Norma Serrano ("Serrano"), the Student Coordinator for Ross University. Serrano's duties include scheduling interviews for prospective students and working with students accepted to Ross University.

3.      Serrano worked with a prospective student named Harjot
Bassi ("Bassi").  Bassi applied to Ross University in or about
January, 2004.  Bassi interviewed at Ross University on February
26, 2004.  Serrano and Bassi had periodic telephone
conversations regarding the status of Bassi's application.
Serrano called Bassi in or about March, 2004 to advise her that
her application to Ross University was rejected.

4.      On April 22, 2004, Bassi called Serrano to advise her
that she received a call from a representative of A.U.A.   The
representative knew that Bassi's application to Ross University
was rejected and asked if Bassi would be interested in applying
to A.U.A.

5.      At Serrano's request, Bassi later obtained the name of
the individual who contacted her from A.U.A., Maxine Paul
("Paul").  Bassi told Serrano that Paul indicated that Bassi's
name was obtained from a "database."

6.      I contacted Bassi directly on May 31, 2004 to confirm
the foregoing.  Bassi explained that she was first contacted by
A.U.A. by whom she later found out was Maxine Paul via a call at
her home.  Bassi's mother gave Paul her cell phone number.
Bassi received a voice mail message from Paul stating that Paul
was aware that Bassi would not be attending Ross' May class.

Bassi returned Paul's call.

7.          Paul indicated during their telephone call that the head of Antigua was formerly affiliated with Ross University and that he had been involved in setting up rotations for the students in the United States.  Paul stated that the class sizes were smaller at A.U.A. and that Bassi would get more individual attention.

8.          Bassi, concerned that A.U.A. had obtained home telephone number and information regarding the rejection of her application by Ross University, contacted Serrano.  After Serrano reassured her that Ross University would not release such information, Bassi contacted Paul to ask where she obtained her information about the rejection.  Paul explained that A.U.A. had a "research committee" who had accessed a database system. Bassi telephoned Serrano with this information.

9.          Although Bassi received an additional call from Paul after this conversation, Bassi did not return her call.

_Susan A. Corrado_

SUSAN A. CORRADO

Sworn to before me this
     day of September, 2004.

_Cheryl A. Sosnovik_
Notary Public

CHERYL A. SOSNOVIK
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires September 10, 2007

_Cheryl A. Sosnovik_

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

DOMINICA MANAGEMENT, INC.,

               Plaintiff,                        **AFFIDAVIT**

   -against-

AMERICAN UNIVERSITY OF ANTIGUA         File No.
COLLEGE OF MEDICINE, NEAL S.
SIMON and SOL WELTMAN,

               Defendants.

-----------------------------------------------------------X
STATE OF NEW YORK)
                 ss.:
COUNTY O F NASSAU)

      PETER J. MASTAGLIO, being duly sworn, deposes and says:

     1.    I am an attorney at law, am admitted to practice before this Court and am a member of the firm of Cullen and Dykman Bleakley Platt LLP, attorneys for plaintiff.

     2.    I make this affidavit pursuant to Rule 65(b) of the Federal Rules of Civil Procedure advising the Court of the oral and written notice to the adverse parties of the fact that plaintiff is seeking a temporary restraining order with respect to the preservation of documents, information, etc.

     3.    At approximately 10:15 A.M. this morning, September 28, 2004, I called defendant Neal S. Simon at his office at defendant American University of Antigua ("AUA"). I was advised that Mr. Simon is currently in India. When I asked for a person at AUA who was in charge in Mr. Simon's place, Harvey Marshak, who is a Vice President and Chief Operating Officer of AUA, came on the phone. I advised Mr. Marshak that this action was

being commenced against AUA, Mr. Simon and Sol Weltman and that an application was being made today for a temporary restraining order relating to the preservation of documents, information, etc.  I told Mr. Marshak that copies of the documents without exhibits and signatures would be e-mailed or faxed to him shortly.

4.      At approximately 10:25 A.M. this morning, I spoke on the telephone with Sol Weltman and advised him of the fact that an action was being commenced against him, AUA and Mr. Simon, that it involved misappropriation of trade secrets, copyright infringement and other claims and that similarly an application would be made today for a temporary restraining order regarding the preservation of documents, information, etc.

5.      In both instances I advised the two individuals of my name, law firm and telephone number.

6.      At approximately 10:40 A.M. today, I received a telephone call from Ron Schechtman and James O'Brien of the Pryor Cashman firm who advised me that they would be representing at least AUA and Mr. Simon and asked that the papers which I had intended to send to AUA be sent to them.

7.      Steps are now being taken to fax those documents to Messrs. Schechter and O'Brien.

PETER J. MASTAGLIO (PM 8303)

Sworn to before me this .
28th day of September, 2004

Notary Public

LENORE I. ZIFF
Notary Public, State of New York
No. 01ZI4924964
Qualified in Nassau County
Commission Expires April 4, 20 06

2