**CONFIDENTIAL**

December 16, 2002

Mr. Neal Simon, J.D., M.A.
Ross University
499 Thornall Street, 10th Floor
Edison, New Jersey 08837

      Re:    <u>Employment Continuation and Release Agreement</u>

Dear Neal:

      This letter agreement ("the Letter Agreement") sets forth the terms of your continued employment with Dominica Management, Inc. ("DMI") and, except as set forth herein, supercedes the Employment Agreement, dated October 5, 1998, by and between yourself and Ross University School of Medicine and Ross University School of Veterinary Medicine (collectively, "Ross University") (the "Employment Agreement").

1.    <u>Term</u>

      As of the date of this Letter Agreement, your employment relationship with Ross University will cease, but you will continue to maintain an employment relationship with DMI. Under this Letter Agreement, DMI agrees to employ you and you agree to remain employed by DMI through June 1, 2003 (the "Term").

      During the Term, DMI may terminate your employment and this Letter Agreement. In the event that DMI terminates your employment during the Term without Cause (as defined in the Employment Agreement), DMI shall be obligated to provide you with salary and benefit continuation through June 1, 2003, and to make the Closing Payment described in paragraph 3 below, within two days of the closing of a sale of Ross University.

      In the event that a definitive agreement for the sale of Ross University has been executed on or before June 1, 2003, but no closing has taken place, on June 2, 2003, you may resign your employment from DMI and become external legal counsel to DMI. In that circumstance, in order to be entitled to the Closing Payment described in paragraph 3 below, you must serve as external legal counsel to DMI through the closing of the sale of Ross University.

      In the event that DMI locates a potential buyer (the "Buyer") for Ross University but has not executed a definitive agreement for the sale of Ross University with that Buyer on or before June 1, 2003, and that Buyer executes a definitive agreement for the sale of Ross University on or before December 31, 2003, then upon the execution of that definitive agreement, you will return to DMI as external legal counsel through the date of a closing of a

December 16, 2002
Page 2

sale to that Buyer. (For the purposes of this Letter Agreement, the "Buyer" means the last individual or entity to have executed a term sheet and/or an exclusivity agreement for the purpose of conducting due diligence prior to June 1, 2003). In that circumstance, in order to be entitled to the Closing Payment you must serve as external legal counsel to DMI through the closing of the sale of Ross University to that Buyer.

During the Term, you may resign your employment from DMI at any time, and be entitled to no additional payments beyond your salary through your last date worked. However, as consideration for the benefits being provided to you under this Letter Agreement, at the time of any such resignation, the parties will execute and exchange a mutual release of claims, in a form substantially similar to those set forth in paragraphs 4 and 5 below, releasing any and all claims as of the date of the resignation.

2.  Nature of Relationship

During the Term, DMI shall be your exclusive employer, except for consulting activities as provided below, and you will not accept employment with any other entity that requires a start date during the Term. During the Term, you will devote your best efforts to further the interests of DMI and Ross University and to perform your duties as directed by Chairman of the Board and Chief Executive Officer, focusing your efforts on your duties with respect to the government and regulatory affairs of Ross University. However, you shall be allowed to devote at least 20% of your time to private consulting activities.

During the period of any external legal counsel relationship between you and DMI, you shall be required to devote approximately 30% of your time to your responsibilities at DMI, through the closing of a sale of Ross University.

3.  Compensation & Closing Payment

During the Term, you shall continue to receive the salary and benefits provided for under paragraphs 4-6 of the Employment Agreement. During any post-Term period of external legal counsel relationship, DMI shall provide you with a monthly retainer equivalent in amount to your monthly salary during the Term.

Upon the closing of a transaction to sell Ross University, DMI will be obligated to make a one-time closing payment to you in the amount of four hundred thousand dollars ($400,000.00) (the "Closing Payment"), which payment will be due and payable to you within two (2) business days of the closing, under the following circumstances:

(a) if a closing of Ross University occurs on or before June 1, 2003, and you did not voluntarily resign during the Term and were not terminated for Cause during the Term; or

(b) if a definitive agreement, but not a closing, for the sale of Ross University was executed on or before June 1, 2003, and you did not voluntarily resign during the Term and you either (i) satisfied your obligations as external legal counsel through the closing date or (ii) were terminated without Cause before June 1, 2003; or

December 16, 2002
Page 3

(c) if a DMI has located a potential buyer (the "Buyer" as defined above) for Ross University but has not executed definitive agreement for the sale of Ross University with that Buyer on or before June 1, 2003, and that Buyer executes a definitive agreement for the sale of Ross University on or before December 31, 2003, and you did not resign during the Term and you either (i) satisfied your obligations as external legal counsel through the date of a closing of a sale to that Buyer; or (ii) were terminated without Cause before June 1, 2003.

As a precondition to your receipt of the Closing Payment, you will be obligated to execute a separate release agreement for any and all claims that you might have as of the closing date, which release agreement will provide for an exchange of releases that are substantially similar to those set forth in paragraphs 4 and 5 below.

4.   Release of Claims by Simon

By signing this Letter Agreement, you acknowledge that the benefits provided herein exceed any obligations owed to you by either Ross University or DMI and you agree to be bound by all the provisions in this Letter Agreement in full and complete satisfaction of any and all claims, whether known or unknown, that you may have against the DMI, Ross University and any of their current and former parents, divisions, subsidiaries and affiliates and each and all of their predecessors, successors, assigns, officers, directors, attorneys, shareholders, employees, representatives and agents (all of whom are referred to below as the "Released Parties") as of the date you sign this agreement.

In consideration of the payment and mutual promises and covenants set forth in this Letter Agreement, you, on behalf of yourself, your heirs, successors, current and former agents, representatives, attorneys, assigns, executors, beneficiaries and administrators, hereby release and forever discharge the Released Parties from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees) of any nature whatsoever, whether in law or in equity, that you now may have or ever may have had against the Released Parties, including but not limited to all matters related to your employment with or separation from Ross University or DMI, as well as all claims arising under the Title VII of the Civil Rights Act of 1964, Age Discrimination in Employment Act, the Older Worker Benefit Protection Act, the Americans with Disabilities Act, the Employment Retirement Income Security Act of 1974, the Family and Medical Leave Act, any federal, state, or local statute, ordinance, executive order, or constitution, and any other common law claims (including contractual and tort claims) relating to your relationship with DMI or Ross University.

Except to enforce the terms of this Letter Agreement, you agree not to file, initiate or commence any legal proceeding, including any complaint, charge, action or arbitration, with any federal, state or local court, agency, department, governmental entity or arbitration forum against the Released Parties regarding any and all claims that you may have against the Released Parties. You also agree to promptly withdraw and dismiss and not to bring again any and all legal proceedings you may have previously brought against the Released Parties. You further agree that if you violate any of the provisions in this paragraph, you shall be required to tender back the Closing Payment and you shall be liable for all attorneys' fees and legal expenses incurred by the Released Parties in defending against any such legal proceedings.

December 16, 2002
Page 4

5.    Release of Claims by DMI and Ross University

In consideration for the mutual promises and covenants set forth in this Letter Agreement, DMI and Ross University, on behalf of their current and former parents, divisions, subsidiaries and affiliates, hereby release and forever discharge you from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees) of any nature whatsoever, whether in law or in equity, that DMI and Ross University now may have or ever may have had against you, including but not limited to all matters related in any way to your employment with or separation from Ross University or DMI.

Except to enforce the terms of this Letter Agreement, DMI and Ross University agree not to file, initiate or commence any legal proceeding, including any complaint, charge, action or arbitration, with any federal, state or local court, agency, department, governmental entity or arbitration forum against you regarding any and all claims that they may have against you. DMI and Ross University also agree to promptly withdraw and dismiss and not to bring again any and all legal proceedings they may have previously brought against you. DMI and Ross University further agree that if they violate any of the above provisions in this paragraph, they shall be liable for all attorneys' fees and legal expenses incurred by you in defending against any such legal proceedings.

6.    Non-Disclosure Obligations

During the Term and thereafter, you have continuing confidentiality obligations to DMI and Ross University as provided herein. Specifically, you agree that you and your agents will not publicize or disclose, directly or indirectly, the existence of this Letter Agreement, the terms or negotiations thereof, the circumstances giving rise to this Letter Agreement, or any confidential information concerning the business, clients or affairs of DMI or Ross University or any subsidiary or affiliate thereof, except that you may disclose the terms of this Letter Agreement to your attorney, accountant, members of your immediate family and as required by law. You further agree that you will advise any individual to whom the terms of this Letter Agreement are disclosed of the confidentiality requirements of this paragraph and that you will use your best efforts to ensure that the confidentiality obligations are complied with in all respects. You further agree that if you violate any of the provisions in this paragraph, you shall be required to tender back the Closing Payment and you shall be liable for all attorneys' fees and legal expenses incurred as a result of such violation.

7.    Knowing and Voluntary Execution

By signing this Letter Agreement, you acknowledge and agree that:

(a)    you have been offered a reasonable and sufficient period of time to review, for deliberation thereon and for negotiation of the terms thereof, and that you have specifically been advised by DMI that you may consult with a legal counsel of your choice and that you did, in fact, consult with legal counsel before signing it;

(b)    you have carefully read and understand the terms of this Letter Agreement;

December 16, 2002
Page 5

(c) you have signed this Letter Agreement freely and voluntarily and without duress or coercion and with full knowledge of its significance and consequences and of the rights relinquished, surrendered, released and discharged hereunder; and

(d) the only consideration for signing this Letter Agreement are the terms stated herein and no other promise, agreement or representation of any kind has been made to you to any person or entity to cause you to sign this Letter Agreement.

8.  Remedies

You and DMI agree that any claim, controversy or dispute between you and DMI (including without limitation DMI and Ross University's affiliates, subsidiaries, successors, officers, employees, representative or agents) arising out of or relating to this Letter Agreement, your employment with or the cessation of your employment with Ross University or DMI, or any matter relating to the foregoing shall be submitted to and settled by arbitration in a forum of the American Arbitration Association ("AAA") located in New York, New York and conducted in accordance with the National Rules for the Resolution of Employment Disputes. This requirement to arbitrate claims, controversies and disputes applies to and includes all claims by you, including without limitation any claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act, the Americans with Disabilities Act or any other federal, state or local statute, rule, ordinance or regulation pertaining to an employee's employment or the termination thereof. The arbitration shall be held before a single arbitrator and shall be final and binding on the Parties. The costs of such arbitration, except for the filing fee and any attorneys' fees, shall be borne by DMI; provided, however, that the arbitrator may award reasonable attorneys' fees to the prevailing party should the underlying statute upon which a party prevails provide for the award of such attorneys' fees.

9.  Miscellaneous

This Letter Agreement constitutes a comprise settlement and is the product of arms-length negotiations. It shall not be construed as an admission of any sort by anyone, nor shall it be used as evidence in a proceeding of any kind, except one in which one of the parties alleges breach of the terms of this Letter Agreement or one in which one of the parties elects to use this Letter Agreement as a defense to any claim.

This Letter Agreement constitutes an integrated agreement, containing the entire understanding of the parties with respect to the matters addressed herein and, except as set forth in this Letter Agreement, no representations, warranties or promises have been made or relied upon by the parties. This Letter Agreement shall prevail over any prior communications between the parties or their representatives relative to the matters addressed herein and shall not be modified, reformed or amended, except in a writing agreement signed by the parties.

This Letter Agreement shall be governed by and interpreted for all purposes under the laws of New York and no other state's laws. If any portion of this agreement is found by a court or arbitrator to be void or unenforceable, then such portion shall be severed from this agreement and the remaining portions of this agreement shall remain in full force and effect.

December 16, 2002
Page 6

    If you agree with and understand all of the provisions in this Letter Agreement, please sign and date below and return the original to me. The enclosed copy is for your records.

                        Sincerely,

                        Timothy E. Foster
                        Chairman of the Board and CEO

I UNDERSTAND AND AGREE TO ALL
OF THE TERMS OF THIS AGREEMENT
WITH WAIVER AND RELEASE:

_____
Neal Simon, J.D., M.A.

Dated: December ____, 2002

NYK 805925-7 0583520013