```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X

DOMINICA MANAGEMENT, INC.,
                                        AFFIDAVIT IN SUPPORT
                Plaintiff,              OF MOTION TO DISQUALIFY

                -against-               File No. 04-CV-7675
                                        (Berman, J.)
AMERICAN UNIVERSITY OF ANTIGUA          (Maas, M.)
COLLEGE OF MEDICINE, NEAL S.
SIMON and SOL WELTMAN,

                Defendants.

-------------------------------X
STATE OF NEW JERSEY)
                    ss:
COUNTY OF MIDDLESEX)
```

JOHN T. ST. JAMES, being duly sworn, deposes and says:

1. I am Vice President and Chief Financial Officer of plaintiff Dominica Management, Inc. ("DMI"). I make this affidavit in support of DMI's motion to disqualify Polatsek and Sclafani ("P&S"), and specifically Leonard A. Sclafani, from defending Neal S. Simon ("Simon") in the present action. The motion is based on the fact that P&S and its named partner Leonard Sclafani have represented both DMI and Ross University in the past in multiple litigated and non-litigated matters and that such representation requires P&S' disqualification under the applicable Canons of Ethics.

2. This action was commenced by the filing of the Summons and Complaint on September 28, 2004. A copy of the Summons and Complaint is attached hereto as Exhibit "A".

1

3. The Complaint alleges six causes of action sounding in copyright infringement, misappropriation of trade secrets and confidential information, aiding and abetting a breach of the duty of loyalty, breach of the duty of loyalty, unjust enrichment and unfair competition.

## Factual Background

4. DMI is an indirect owner of a majority interest in Ross University School of Medicine ("Ross University"). DMI exists primarily to provide administrative services in the United States to Ross University and its affiliate veterinary college.

5. Ross University in turn is a medical school located on the island of Dominica, West Indies. It was founded in 1978 and is accredited by the Dominica Medical Board, which has been deemed to have accreditation standards comparable to United States standards by the National Committee on Foreign Medical Education and Accreditation of the United States Department of Education.

6. Ross University provides a first-class medical education for qualified applicants at its medical school in Dominica and at 41 hospitals in the United States that are its clinical affiliates.

7. During its 26 year history, over 4,000 Ross University graduates have entered United States medical residencies practicing in every specialty in medicine, including programs at all of the major academic medical centers in the United States.

8. In providing administrative services for Ross University, DMI provides a number of specific services, among which are:

   a. creating and publishing student handbooks, catalogues and other printed materials;
   b. compiling information and creating computer services that are used in the administration of the affairs of Ross University, and which give DMI and Ross University distinct advantages over their competitors; and
   c. originating and maintaining confidential and proprietary business information and trade secrets, all to be used for the benefit of Ross University.

9. Defendant American University of Antigua ("AUA") is a newly-formed foreign medical school chartered in 2001 by the island nation of Antigua and is located on that island. AUA, which conducted its first classes in February, 2004, is in competition with Ross University in providing medical school education to students. AUA maintains a place of business in the United States at Suite 1600, 501 Fifth Avenue, New York, New York 10017.

10. Defendant Neal S. Simon ("Simon") is a former employee and officer of Ross University, serving from 1989

through December 16, 2002. During that period Simon served as President and General Counsel of Ross University.

11. From December 16, 2002 to May 16, 2003, Simon was employed by DMI, voluntarily terminating his DMI employment on the latter date.

12. Sometime after leaving DMI's employ, Simon became employed by AUA as its President and continues to serve in that capacity.

13. During his tenure at both Ross University and at DMI, Simon had access to the confidential and proprietary business information of those organizations, as well as their trade secrets.

### Copyright Infringement

14. The Complaint alleges Defendant AUA and Simon have caused to be published the *American University of Antigua College of Medicine Student Handbook* ("AUA Student Handbook").

15. The Complaint further alleges copyright infringement since the AUA Student Handbook is substantially similar to and in many respects appears to have been directly copied from the 2002 Student Handbook of Ross University.

### Misappropriation of Confidential and Proprietary Information and Trade Secrets

16. DMI's management has learned since March, 2004 that, after Simon left DMI's employ to work at AUA, he

4

began a major effort to contact a number of DMI employees who continued to work for Ross University in order to obtain from them confidential and proprietary information and trade secrets of DMI. Such information and trade secrets would enable AUA to "jump-start" its operations and to obtain the benefit of the systems and information that took DMI years and millions of dollars to develop.

17. The Complaint alleges four specific instances of actual or attempted misappropriation of confidential and proprietary information and trade secrets. They were:

a. negotiations that took place from approximately October, 2003 through April, 2004 whereby AUA and Simon sought to acquire from defendant Sol Weltman, who was then a computer programmer employed by DMI, a specific computer program developed for Ross University by DMI for processing applicants and potential applicants to Ross University; While defendants during the brief discovery conducted to date in this action acknowledged that Mr. Weltman in fact installed a program at AUA, they claim that that program and the one eventually adopted by AUA were developed independently from Ross University and DMI;

b. improper contacts with DMI employees by Simon and AUA to obtain proprietary information and trade secrets. In one instance, one of the DMI employees, John Kramer,

5

advised via e-mail the Vice President of Academic Affairs of Ross University of the steps being taken by DMI and Ross University to deal with "recent difficulties with the TSBME" (the Texas State Board of Medical Examiners). Simon is listed in the message as the recipient of a "BCC" or blind copy, showing that neither Kramer nor Simon wanted the Academic Vice President to know that the information being transmitted to her was also being sent to Simon; and

c.  improper contacts with at least one rejected Ross University applicant based on information about that rejection that had to have been tortiously obtained from DMI since Ross University applicants' names, applications, and actions taken on those applications are kept strictly confidential.

18.  As a result of the foregoing, Plaintiff commenced this lawsuit against Simon, AUA and Weltman.

### Procedural History

19.  Concurrently with the commencement of this action, DMI moved by order to show cause on September 28, 2004 seeking expedited discovery as to the allegations raised in the Complaint as a prelude to a possible motion for a preliminary injunction. The firm of Pryor Cashman acknowledged service on behalf of defendants AUA and Neal Simon and Neal Flaum, Esq. acknowledged service on behalf

6

of defendant Sol Weltman. As confirmed at a conference with the Court, the parties stipulated to engage in limited document production and a series of four depositions of defendants and AUA officials, while simultaneously agreeing to a stay of the time to answer or otherwise move with regard to the complaint.

20. On October 28, 2004, Sol Weltman, represented by his counsel Neil Flaum, was the first to be deposed. It was at that deposition that Leonard Sclafani of P&S first identified himself to the plaintiff as counsel for Neal Simon. Mr. Sclafani stated the following:

> For the purposes of this deposition I'm representing Mr. Simon. The full extent of my representation has yet [sic] been determined because I was only recently apprised of the action and only about half an hour ago advised that there would be depositions in this case…
>
> It appears that there's a conflict between Neal Simon and AUA, the Defendant, hence my representation …

See Deposition Trans. of Weltman, p. 9 -10 attached hereto as Exhibit "B".

21. Since the parties have agreed to stay answering the complaint until the close of expedited discovery, no formal notices of appearance have been filed on behalf of the respective defendants.

22. After learning soon after the Weltman deposition that Mr. Sclafani and P&S had represented both DMI and Ross in the past, further investigation of that representation

7

was conducted resulting in a letter from DMI's counsel to P&S requesting that P&S withdraw from its representation of Simon in this action.  A copy of that request is attached hereto as Exhibit "C".

23.   P&S refused to remove itself as counsel for Simon as indicated by its response attached hereto as Exhibit "D".

### Polatsek and Sclafani's Representation of DMI and Ross University

24.   Since DMI's present management has very little first-hand familiarity with the details of P&S' representation of DMI and Ross which ended in approximately September, 2000, the investigation as to the details of that representation focused on the available documents that were obtained both from DMI's files and from the law firm of Gordon and Haffner, which succeeded P&S in the three litigation matters of which we are aware.  As evidenced by the following facts, that investigation reveals that at least from November, 1997, when DMI was incorporated by P&S (see Certificate of Incorporation attached as Exhibit "E"), that firm served as DMI and Ross' principal outside counsel in the New York metropolitan area with major access to DMI's employees and business secrets.

**A.   The Retainer Agreement**

25.   DMI is the indirect owner of a majority interest in Ross University and exists primarily to provide administrative services to the school as memorialized in an

8

Administrative Services Agreement dated November 27, 1997. A copy of this Agreement is attached hereto as Exhibit "F" (hereinafter "Services Agreement"). In the Services Agreement, DMI agreed, among other things, to:

> …arrange for the provision of professional assistance to the School of Medicine through accountants, **attorneys**, and other advisers…

See Exhibit "F", ¶1.2.10 . (emphasis added).

26. The Services Agreement was signed by Robert Ross as Chairman of DMI and Neal Simon as President of Ross University.

27. In or about October, 1998, P&S presented to Ross for signature a Retainer Agreement that recited that it was intended to provide Ross University and its affiliate veterinary school with "general outside counsel and legal representation." The Retainer Agreement is attached hereto as Exhibit "G".

28. It is my understanding that this Retainer Agreement was later signed at the request of the outgoing Chairman of DMI, Robert Ross, acting as President of Ross University, in or about December 1999 and was made retroactive to 1998.

29. By its terms, the Retainer Agreement recognized that there had been a long relationship between P&S on the one hand and Ross University and necessarily DMI on the other, and contemplated a future five year agreement to

9

provide "legal advice, counsel, research, negotiation and representation," just as that firm had provided in the past.

30.  The Retainer, written on P&S letterhead, recites that Neal Simon, who was then President and General Counsel of Ross and an officer of DMI, was at the same time "of counsel" to P&S.  Just by virtue of Simon's position at the time as "of counsel" to P&S, when he was concurrently a senior officer of Ross University and DMI, that firm had to have obtained confidential and proprietary information from those corporations.

   B.   **Specific Representation by P&S**

31. P&S represented Ross and DMI in at least five specific matters of which we have become aware, three of which were litigated matters, and one of which involved DMI specifically as a defendant.  See P&S September 26, 2000 bill for services attached hereto as Exhibit "H".

(i)  <u>Nasir Abdulla Babiker v. Ross University School of Medicine</u>, Docket No. 98 Civ. 1429 (S.D.N.Y.) ("<u>Babiker</u>") involved the expulsion of plaintiff/student from Ross University. The <u>Babiker</u> litigation concerned issues involving the propriety of plaintiff's participation in clinical rotations, and the policies and academic standards required by Ross University of its current  students.

(ii) P&S represented Ross University, DMI, Inc. and the former Chairman of DMI ,Robert Ross, in an action entitled

10

<u>Phinas Friedenberg v. Ross University, Dominica Management, Inc. and Robert Ross</u>, Index No. 600133/00, Supreme Court, New York County.  This litigation, which specifically involved a former employee's entitlement to pension payments, involved discrete issues as to the corporate structure of and relationships between DMI and Ross University.

(iii) P&S represented Ross University in <u>State of New York v. Ross University School of Medicine,</u> 000138/99, Supreme Court, Albany County.  This litigation involved the imposition of fines by the New York State Temporary Commission on Lobbying and the subsequent actions to vacate those fines.

- (i)   P&S engaged in client consultation and legal research in a matter described as "Ross University with Blackburn"
- (ii)  P&S provided an opinion and report to Ross University's auditors.

    32.   In addition to the five matters listed above, it is my understanding that at the on-the-record conference with Magistrate Judge Maas on December 17, 2004, Mr. Sclafani revealed that his representation of Ross covered two or three additional litigation matters involving Ross' "criteria" for "entitlement to a diploma" in one instance in Suffolk County and Ross' "criteria" for:

11

> ...admission into either clinical rotations in the United States or its various states, or ultimate licensure in the states...

in the other.  See transcript[1] of December 17, 2004 Court appearance (misdated "December 22, 2004") at 4 and 5, a copy of which is attached hereto, marked Exhibit "I".

### C. General Representation by P&S

33.  Above and beyond the specific lawsuits in which Mr. Sclafani represented Ross and/or DMI, the correspondence reveals extensive involvement by Mr. Sclafani and his firm in the non-litigation, general legal affairs of Ross and DMI over a very short period of time.  In his October 1, 1999 General Retainer Agreement letter (Exhibit "G"), Mr. Sclafani recites that P&S has been providing Ross "for many years" services of the same "range, scope and type" as he proposed to provide for the next five years at the rate of $10,000.00 per month or $120,000.00 per year.  Those services include "legal advice, counsel, research [and] negotiation," above and beyond "'representation" of Ross in litigated matters.  Thus, Mr. Sclafani is acknowledging that the general services that his firm hopes to provide and has been providing to Ross amount to 400 billable hours of work per year using a $300.00 per hour blended rate.

---

[1] The transcript noted, at 2, that "Beginning portion of proceeding not recorded..."

34.    Mr. Sclafani's November 11, 1994 letter (Exhibit "D") puts a different light on the intensity of the general legal services provided by his firm to Ross and/or DMI prior to the October 1, 1999 General Retainer Agreement letter.  He states in response to the November 5, 2004 letter from Mr. Mastaglio (Exhibit "C") that:

> The fee agreement [$10,000 per month for the next five years], contrary to your assertions, was not "a future retainer agreement."  Rather, it was an agreement under which my firm was to be paid in the future for services that had already been rendered and accepted.

Mr. Sclafani then went on to demand payment of that full amount, i.e., $600,000.00.

35.    Putting aside why, through a document reciting that the installment payments are for future legal services, Mr. Sclafani would seek to obtain a written commitment to pay $600,000.00 for previously-earned legal fees, the position that Mr. Sclafani has taken, if accepted, reveals that the services allegedly rendered to Ross and/or DMI amounted to 2,000 hours of lawyers' time, again using a $300.00 blended rate.  In noting this fact, I point out that it is DMI and Ross' position that neither of those entities owe Mr. Sclafani or his firm any monies for past legal services rendered.

36.     Examples of some of the insights that Mr. Sclafani claims to have obtained from his representation of Ross and DMI are set forth in his following comments at the December 17, 2000 Court appearance.

> They – they do their student work, their Classroom work, in -- in the -- the – Classrooms in the – in the Caribbean, and then they do clinical rotations in – with the – the universities – they get affiliation agreements with the various hospitals all over the United States, and if they're lucky enough to get clearance from the state education departments, they can – they can then have their students do training, clinical training, --

Exhibit I, at 14.

> They [the Caribbean medical schools] raid each other's students on a regular basis.

Exhibit I, at 15 16.

37.     From the above, it appears that Mr. Sclafani has become quite involved in and claims to have a great insight into the internal affairs of Caribbean medical schools and that a great deal, if not most, of his experience was derived from his relationship with and involvement in the legal affairs of Ross and DMI.

15

## Conclusion

38.   Based on the above, and as is more fully set forth in the accompanying memorandum of law, the close relationship between P&S on the one hand and DMI and Ross University on the other, which included, not just a typical broad spectrum of litigation matters, but "legal advice, counsel, research, negotiation and representation" over a several year period, by itself mandates disqualification of P&S in this action.  The access of P&S during that period to DMI and Ross University's confidential and proprietary information is magnified incrementally by Mr. Simon's position with P&S as "of counsel."

39.   Accordingly, DMI moves to disqualify P&S and Mr. Sclafani as Mr. Simon's counsel in this action.


                                                  _/s/John T. St. James_____
                                                  JOHN T. ST. JAMES

Sworn to before me this
    day of February, 2005

__/s/ Keisha Cole_____
     Notary Public