
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

DOMINICA MANAGEMENT, INC.,

        Plaintiff,

  -against-                                    File No. 04-CV-7675
                                                      (Berman, J.)
AMERICAN UNIVERSITY OF ANTIGUA          (Maas, M.)
COLLEGE OF MEDICINE, NEAL S.
SIMON and SOL WELTMAN,

        Defendants.

----------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISQUALIFY POLATSEK AND SCLAFANI
<u>AS COUNSEL FOR DEFENDANT NEAL S. SIMON</u>**

**<u>STATEMENT OF FACTS</u>**

      The facts are fully set forth in the moving affidavit of John St. James and will not be repeated herein for the sake of brevity.

## ARGUMENT

## DISQUALIFICATION OF POLATSEK AND SCLAFANI IS PROPER

An attorney may be disqualified from a matter if that attorney represented an adverse party in a related matter. The attorney may be disqualified if the following standard is met:

(a)   the moving party is a former client of the adverse party's counsel;
(b)   there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
(c)   the attorney whose disqualification is sought has access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

See Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983). Each of these elements will be discussed herein.

**A.   DMI Was Formerly Represented By Polatsek and Sclafani**

The Second Circuit requires that the party seeking disqualification be a former client of the adverse party's counsel.[1] See Evans, 715 F.2d at 791 (2d Cir. 1993). Disqualification is appropriate even when the adverse party's counsel represented a part owner of the party seeking disqualification. See Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562 (2d Cir. 1973). Similarly, on a motion to disqualify, the relationship between a parent corporation and its subsidiary is sufficient for the subsidiary to be considered the former client of the attorney who had previously represented the parent. See Decora Inc. v. Wallcovering, Inc. et al., 899 F. Supp. 132 (S.D.N.Y. 1995).

---

[1]   It should be noted that P&S in its letter refusing to withdraw as counsel for Neal Simon made note that DMI is the "sole plaintiff" in this matter. See St. James Affidavit at ¶23. It is anticipated that P&S will argue that it did not represent DMI and only represented Ross University. It is submitted that plaintiff clearly represented DMI in at least one litigation and in any event will be found to have represented DMI since it represented Ross University, a subsidiary of DMI.

DMI was incorporated in 1997 by the filing of a certificate of incorporation by P&S. A copy of the certificate with acknowledgment of the filing by P&S is attached to the St. James Affidavit as Exhibit "E". DMI is the indirect owner of a majority interest in Ross University and DMI exists primarily to provide administrative services to the school and its veterinary school affiliate. This arrangement is memorialized in an Administrative Services Agreement dated November 27, 1997, wherein DMI agreed, among other things, to:

> ... arrange for the provision of professional assistance to the School of Medicine through accountants, **attorneys**, and other advisors ...  (emphasis added)

A copy of the Administrative Services Agreement, ¶1.2.10 is attached to the St. James affidavit as Exhibit "F". This agreement was signed by Robert Ross as Chairman of DMI and by Neal Simon as President of Ross University.

P&S, which had been representing Ross University for a number of years prior thereto, executed a retainer agreement a year after the Administrative Services Agreement was executed to provide Ross University with a "general outside counsel and legal representative." A copy of the Retainer Agreement between Ross University and the Firm is attached to the St. James affidavit as Exhibit "G" (hereinafter referred to as "Retainer"). The Retainer was signed on behalf of Ross University by Robert Ross, who was also the chairman of DMI. The Retainer contemplated five years of future legal services while acknowledging previous extensive representation of Ross University encompassing "advice, counsel, research, negotiation and representation." In addition to all of this unspecified general legal representation, P&S represented Ross and DMI in at least five specific matters, three of which were litigated matters, and one of which involved DMI as a defendant being represented by P&S. (Phinas Freidenberg

-3-

v. Ross University, Dominica Management, Inc. and Robert Ross, Index No. 600133/00, Supreme Court, New York County).

Since DMI was incorporated by P&S, is an indirect owner of Ross University, provides ostensibly all administrative services to Ross University, is responsible for providing legal representation for the University, and since its chairman procured P&S as general outside counsel for Ross University, it is clear that the relationship between DMI and Ross is sufficient for DMI to be considered a former client of P&S.  To hold otherwise would be "to exalt form over substance."  See See Decora, 899 F. Supp. at 137, citing, Baxter Diagnostics, Inc. v. AVL Scientific Corp., 798 F.Supp. 612 (C.D. Cal. 1992).  This is especially true in light of the fact that the issues involved in this action involve a copyright owned by DMI relating to Ross University's Student Handbook and confidential information concerning the operation of Ross University as a unique foreign medical school providing graduates to medical facilities in the United States.

**B.     During its Former Representation of DMI
        Polatsek and Sclafani Obtained Information
        Substantially Related to the Issues in this Case**

The American Bar Association Code of Professional Responsibility (the "ABA Code"), as recognized by the Second Circuit, provides the guidelines for preserving and maintaining confidences and secrets of a client.  The seminal case decided by this Court, T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F. Supp. 265 (S.D.N.Y. 1953) discusses the lawyer's duty of "absolute loyalty."

> A lawyer's duty of absolute loyalty to his client's interests does not end with his retainer. He is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship.

Id. at 268. In citing the Canons of Professional Ethics the court noted that:

> The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed.

Id. The court held that:

> The former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client.

Id. The court must determine whether "it can reasonably be said" that during the former representation the attorney that is sought to be disqualified "might have" acquired information related to the subject of the subsequent representation. Id. at 269.

It is submitted that it can reasonably be said that through P&S' representation of DMI and Ross as described in section A, *supra*, and as will be demonstrated herein, the Firm not only "might have" but does have information related to the subject of the representation of Neal Simon in this action.

The party moving to disqualify counsel is not required to prove that an attorney had access to or received privileged information. See Government of India et al. v. Cook Indus., Inc., 569 F.2d 737 (2d cir. 1978). There is a presumption, albeit rebuttable, of communication of

client confidences implicit in the substantial relationship test.  See Decora, 899 F. Supp. at 137.  Thus, it is necessary to establish that the matters are substantially related and the actual communication of information will be presumed.

This Court has recognized that "ascertaining the substantiality of a relationship between two representations is more difficult, however, when the former representation entailed not litigation but general background legal work."  See United States Football League, et al. v. Nat'l Football League, et al., 605 F. Supp. 1448 (S.D.N.Y. 1985).  The test, similar to the substantially related test, is "whether facts which were necessary to the first representation are necessary to the present litigation."  See Guerrilla Girls, Inc. v. Donna Kaz, 2004 U.S. Dist. LEXIS19969 (S.D.N.Y. 2004).  While general knowledge of the movant's business affairs and background is not in itself a basis of disqualification, if the litigation deals with the movant's "market behavior" then the attorney's knowledge of "business plans, economic organization, prospective market position and other such background information of the movant becomes relevant."  Id. at 1460.

The Complaint essentially alleges that AUA and DMI are competing medical schools providing foreign medical school services to potential physicians planning to practice in the United States.  This encompasses a certain market of students that would choose to attend a foreign medical school.  Thus, the allegations in the complaint of improper and illegal contacts with DMI employees by Simon and AUA designed to obtain DMI's confidential and proprietary information and trade secrets to bolster AUA's presence as a medical school is central to this case as are the inner workings of a  foreign medical school.  The Retainer by its terms recognized that there had been a long relationship between P&S on the one hand and Ross University and necessarily DMI on the other, and contemplated a future five year agreement to provide "legal

advice, counsel, research, negotiation and representation" just as that firm had provided in the past.  Thus, P&S will have knowledge of DMI's strategies and position in the market that would be relevant to a defense of Neal Simon making P&S' former representation substantially similar to its current representation.

In addition to its long history of providing general legal representation of Ross University, P&S was retained in <u>Nasir Adulla Babiker v. Ross University School of Medicine</u>, Docket No. 98 Civ. 1429 (S.D.N.Y.) ("Babiker"), a litigation that involved the expulsion of the plaintiff/student from Ross University.  The <u>Babiker</u> litigation involved the propriety of plaintiff's participation in clinical rotations and necessarily Ross University's academic standards for its current students.  As part of the defense of Ross University, confidences regarding Ross University's academic standards and requirements for its students were communicated to the Firm.  Since this type of proprietary information is at issue in this case, the matters are substantially similar.

P&S made a motion for summary judgment in the <u>Babiker</u> case.  In support of this motion an affidavit from the current academic Vice President of Ross University was submitted.  The Firm in preparing this affidavit presumably gathered information regarding Ross University's academic standards and policies relating to its student body and criteria since the motion involved the propriety of expelling a student from its program for not meeting requisite standards.

In general, P&S provided, as described in the Retainer, "many years" of service to Ross University, and as a result DMI.  It endeavored to continue for an additional five year term legal services that included "advice, counsel, research, negotiation, and representation" as

contemplated by the Retainer.  At the same time, the defendant Simon is listed as "of counsel" to the Firm on the Firm's letterhead that encompasses the Retainer.  Presumably the Firm possesses information that Neal Simon obtained while concurrently serving as General Counsel and President of Ross University.

## CONCLUSION

P&S' prior representation of Ross University and DMI, including its employment of Neal Simon, who was concurrently Ross University's General Counsel, is so pervasive that it will affect the intuition and judgment with respect to knowing what to ask for in discovery, which witnesses to depose, the questions to ask, what lines of attack to abandon and what to pursue, the settlements to accept and offers to reject.  See Felix v.Balkin, et al., 49 F. Supp 2d 260, 272-273 (S.D.N.Y. 1999).  Not only are the issues substantially related but the appearance of impropriety is too great to allow P&S to continue its representation of Neal Simon.

Dated:  Garden City, New York
         February 10, 2005

                              Respectfully submitted,

                              CULLEN AND DYKMAN LLP

                              By: /s/ Jennifer A. McLaughlin
                                  JENNIFER A. MCLAUGHLIN (JM 5678)
                                  Attorneys for Plaintiff
                                  100 Quentin Roosevelt Boulevard
                                  Garden City, New York 11530


Jennifer A. McLaughlin
Peter J. Mastaglio
  Of Counsel