UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -X
DOMINICA MANAGEMENT, INC.

                  Plaintiff,

        -against-

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE, NEAL S.
SIMON and SOL WELTMAN

                  Defendants.
- - - - - - - - - - - - - - - - - - - -X

Index #04-CV-7675
(Berman, J.)
(Maas, M)

**REQUEST FOR WAIVER OF
REQUIREMENT TO SUBMIT
OPPOSING MEMORANDUM OF
LAW**

Because the law surrounding plaintiff's motion to disqualify Leonard A. Sclafani and Polatsek and Sclafani from representing Neal Simon in this action is not complex and because defendant agrees that plaintiff's Memorandum of Law in support of its motion accurately sets forth the applicable law, defendant Neal Simon respectfully requests that the Court waive the requirement that a memorandum of law be submitted in connection with the defendant's opposition to plaintiff's motion.

                  Respectfully Submitted,

                  POLATSEK & SCLAFANI
                  Attorneys for Defendant
                  Neal Simon
                  275 Madison Avenue 28th Floor
                  New York, New York 10016

        By _____
            Leonard A. Sclafani / Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -X
DOMINICA MANAGEMENT, INC.              Index #04-CV-7675
                                   (Berman, J.)
                Plaintiff,   (Maas, M)

      -against-               **AFFIRMATION IN OPPOSITION**
                                **TO MOTION TO DISQUALIFY**
                                **COUNSEL**
AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE, NEAL S.
SIMON and SOL WELTMAN

                  Defendants.
- - - - - - - - - - - - - - - - - - - - -X

    Leonard A. Sclafani hereby affirms under penalty of perjury
as follows:


    1.  I am an attorney duly admitted to practice law before
the courts of the State of New York.  I am a member of the firm
of Polatsek and Sclafani, attorneys for defendant Neal Simon in
the above captioned matter.  As such, I am fully familiar with
the facts and circumstances surrounding this matter and
hereinafter set forth.


    2.  I submit this affirmation in opposition to plaintiff's
within motion for an order disqualifying your affirmant and my
firm from representing Mr. Simon herein.  I respectfully submit

that for the reasons, and based upon the facts, as hereinafter set forth, there is no basis whatsoever for plaintiff's motion.

3.   In support of its motion, plaintiff accurately sets forth the state of the law with respect to the disqualification of a lawyer from representing his client in a litigation before this Court.  As plaintiff correctly advises, one is not entitled to have an attorney disqualified from representing an adverse party unless he proves that:

> a) the moving party is a former client of the adverse party's counsel;
>
> b) there is a **substantial relationship** between the subject matter of the counsel's prior representation of the moving party and the issues in the present law suit; and
>
> c) the attorney whose disqualification is sought has access to, or was likely to have had access to, **relevant** privileged information in the course of his prior representation of the client. (Emphasis added) (Plaintiff's Memorandum of Law at pg. 2

4.  Having accurately set forth the three elements that plaintiff must prove in order to have your affirmant and my firm disqualified from representing Mr. Simon in the instant matter,

2

plaintiff utterly fails to provide any facts or evidence even remotely tending to prove either of the last two elements and attempts to meet its burden of proof of the first element by sleight of hand, clever draftsmanship and omission of relevant facts well known to them.

5.   Although your affirmant and my firm did represent Ross University School of Medicine in connection with numerous matters over a period of many years, the same is not true with respect to our alleged representation of plaintiff, Dominica Management, Inc.

6.   As hereinafter set forth more fully, my firm and I did, in November, 1997 represent an individual by the name of Dr. Robert Ross in connection with his requirement that a New York corporation known as Dominica Management, Inc. be formed.  My firm also did, a year or two later, represent that entity together with other defendants in a suit by the former registrar of Ross University for claimed unpaid pension benefits.

7.   However, I do not believe that the entity known as Dominica Management, Inc. that my firm had caused to be formed

3

for Dr. Ross, and that I had represented, is the same entity as plaintiff in this action.

8.  As set forth in the affidavit of Neal Simon submitted herewith, it appears that the entity that is plaintiff herein is not the same entity that my firm and I had represented.

9.  Accordingly to Mr. Simon, who was, for many years until May, 2003, the president and general counsel of Ross University, after Dr. Ross sold his interest in both Ross University and the "Dominica Management, Inc." entity that my firm had formed for him, the new owners formed an offshore corporation, placed the shares of Ross University into that entity, placed the shares of that offshore company into the hands of "Dominica Management, Inc.", and terminated the administrative services contract hereinafter discussed more fully that had been made between Ross University and the Dominica Management, Inc. entity that your affirmant's firm had incorporated for Dr. Ross.

10. Thus, the "Dominica Management, Inc." that my firm had I incorporated went from being a management company related to Ross University only under an administrative services contract to a

4

holding company that holds the shares of an offshore company that, in turn, holds Ross University's shares.

11. More importantly, it would appear, upon the completion of the foregoing, the real parties in interest behind Ross University formed a New Jersey corporation under the name of "Dominica Management, Inc." (See Exhibit "A") which undertook, by contract with Ross University, the administrative duties previously performed by the "Dominica Management, Inc." that my firm had incorporated.

12. We believe that it is the latter "Dominica Management, Inc." that is the plaintiff here.

13. Neither I nor my firm ever represented that latter entity.

14. In any event, our representation of the entity named "Dominica Management, Inc." that I caused to be incorporated eight years ago was minimal both in duration and in scope, and occurred at a time when that entity's only relationship with Ross University School of Medicine was contractual.

5

15. Although plaintiff cites the law governing disqualification of an attorney who has represented a parent or a subsidiary of the party seeking disqualification of counsel, and although plaintiff has implied in its papers that plaintiff "Dominica Management, Inc." was a subsidiary of Ross University School of Medicine during the period of time that your affirmant and my firm represented Ross University, plaintiff was, at all relevant times, and presently is, aware that neither your affirmant nor my firm ever represented any entity known as "Dominica Management, Inc." at any time that it was either a subsidiary or a parent of Ross University.

16. Indeed, plaintiff was, at all times, and is, well aware that neither my firm nor I have ever engaged in any representation of either Ross University or of "Dominica Management, Inc." for well over five years and that, during those five years, the ownership of both companies changed twice and the corporate structures of both entities were twice reorganized (assuming arguendo that the Dominica Management, Inc. that I represented is the same entity as plaintiff herein).

17. Notably, plaintiff has failed to offer any documentary

6

evidence establishing the relationship as parent or subsidiary between it and Ross University (who is not a party to this action). The only evidence that plaintiff offers indicating the existence of any relationship at all between "Dominica Management, Inc." and Ross University is a 1997 management contract between Ross University and "Dominica Management, Inc." (Exhibit "F" to plaintiff's moving papers).

18. Neither I nor my firm ever represented either Ross University or Dominica Management, Inc. in connection with any subject matter that has any relationship whatsoever to any of the issues in the present case; nor has, or had, either of us any access to privileged information in the course of our representation of either Ross University or "Dominica Management, Inc." that could be regarded as even remotely relevant to any of the issues in this case.

19. Indeed, plaintiff was, at all times, and is, well aware, given the nature or its claims in this action and its substantial knowledge of the facts surrounding my prior representation now called into question, that it is not even remotely likely that either I or my firm ever had any access to such relevant

7

privileged information.

20. The facts surrounding this matter are hardly complex and are hereinafter set forth.

21. Your affirmant first undertook the representation of Ross University School of Medicine in 1985 or 1986. My firm, Polatsek and Sclafani, was formed, and began representation of Ross University, shortly thereafter.

22. Initially, and for the first several years of our representation of Ross University, that representation was limited to suits involving collection of unpaid tuition, suits by and against suppliers of the University's goods and services and landlord-tenant matters.

23. Over the course of the next several years, the scope and quantity of the representation that my firm and I provided to Ross University steadily increased. We took on the representation of the University in such matters as civil rights actions brought by students of the University against it, tax matters, issues concerning the University's obligations under its

8

charter with the government of Dominica and the rights of the University in connection therewith, the drafting of various agreements between the University and its vendors and faculty etc.

24. Our representation of Ross University continued until the spring of 2000.

25. Except for briefest period of time during which the ownership of Ross University (and, as well, of "Dominica Management, Inc."), was in the process of changing hands, for the entire period of time that my firm and I represented Ross University, that entity was wholly owned by one Dr. Robert Ross, the University's chairman and founder.

26. At no time during any of the period that your affirmant provided any services whatsoever to either Ross University or to "Dominica Management, Inc." was either of those entities a parent or a subsidiary of the other.

27. Dominica Management, Inc. was not even formed until November 26, 1997.

28. At that time, for tax reasons and in order better to shield Ross University School of Medicine against liability to its faculty, students and vendors, Dr. Ross determined to form a corporation that he would wholly own and that would provide such administrative services to the University on a contract basis as the retention and employment of the University's faculty and support staff, the payment of salaries and other expenses incurred in connection with the operation of the University, the purchase of supplies, equipment, books, etc. that the University required, and the management of properties used by the University.

29. Dominica Management, Inc. was formed as a New York corporation to serve that purpose.

30. It appears from plaintiff's papers that, in January, 1998, Ross University did enter into a such an "Administrative Services Contract" with "Dominica Management, Inc." albeit, I have no recollection of any involvement in that transaction.

31. As above set forth, my firm represented Dr. Ross in connection with the incorporation of Dominica Management, Inc.

10

32. To the best of my knowledge and my firm's current records, neither of us provided any further representation to Dominica Management, Inc. until a few years later, when a former registrar of Ross University sued Dr. Ross and both of Ross University and the Dominica Management, Inc. that my firm had incorporated, claiming that he was owed pension benefits. I represented all three entities, at Dr. Ross' request, in that action.

33. I have no recollection, nor do my firm's records reveal, that either of us ever represented any "Dominica Management, Inc." in connection with any other matters.

34. In late spring or early summer, 2000, Dr. Ross closed on the sale of both Ross University and "Dominica Management Inc." to an investment banking firm headed by one Jeffrey Leeds and known as The Leeds Group.

35. Neither I nor my firm had any involvement in the sale or in the representation of any of the parties to the sale in connection therewith.

11

36. As of the date of the sale, Ross University was indebted to my firm for past due legal services in connection with our representation of the University in various matters of the type above identified and in connection both with our representation of Dr. Ross, personally, and with numerous other business enterprises owned by him, our fees for which services, at our insistence, Ross University had agreed to pay.

37. As of that same date (the closing on the sale by Dr. Ross of Ross University), my firm was also in the second year of a five year non-terminable (except for cause) retainer agreement with Ross University under which we were to receive $10,000.00 per month for our services. A copy of that retainer agreement appears as exhibit "G" to plaintiff's motion papers.

38. As of the date of the sale, our firm was handling three litigations matters for Ross University: Nasir Babiker v. Ross University, USDC SDNY Index #98 CIV 1429; Pinhas Friedberg v. Ross University, Dominica Management, Inc., Robert Ross et al, Sup Ct NY Co., Index #600133/01; and New York State v. Ross University, Sup Ct, Alb Co, Index #L-00138-99.

12

39. The <u>Babiker</u> matter was a suit by a former student of Ross University who the University had expelled for academic failure in which Mr. Babiker claimed that he was expelled because of his race, religion and/or citizenship.

40. The <u>Pinhas Friedberg</u> matter is above discussed and involves Mr. Friedberg's claim that he was entitled to pension benefits that Mr. Friedberg claimed Dr. Ross, Ross University and Dominica Management, Inc. had agreed, but failed, to pay.

41. In <u>New York State v. Ross University</u>, my firm and I represented the University in connection with a claim by the New York State Lobbying Commission that Ross University had failed to comply with the lobbying statutes and was, therefore, liable for fines and penalties.

42. In addition to these matters, at the time of Dr. Ross' sale of Ross University, my firm also represented the University in that we provided an opinion letter to the accountants for the purchasers of the University in connection with its sale, limited to our identification, and opinions with respect to the likelihood of success, of the legal matters that we were then handling for the University.  We also were engaged by the

University in providing legal advice with respect to one Mr. Blackburn who, I believe, but cannot say at this time with certainty, was a disgruntled faculty member of the University.

43. Almost immediately after the closing on the sale, the new owners, The Leeds Group, advised that they would no longer employ our firm; however, we continued, by agreement, in the representation of Ross University (and in the <u>Pinhas Friedberg</u> matter, of "Dominica Management, Inc.") in the above described cases for a brief period of time until the new owners could find and retain substitute counsel.

44. We billed the University for these services; however, it refused to pay them.

45. In September, 2000, pursuant to the new owners' request we submitted a consolidated invoice to them as part of settlement negotiations. A copy of that consolidated invoice appears as exhibit "H" to plaintiff's moving papers herein.

46. The University and its new owners failed to pay the invoice.

14

47. The discharge of my firm from the representation of Ross University constituted a breach of our retainer agreement in that it was "without cause".

48. It was the claim of the new owners that the agreement was the product of "fraud" between Dr. Ross and I in that, according to the owners' claim, the agreement was actually signed in 1999 and not in 1998.

49. Neither was there any truth to the claim, nor, even if true, would it have constituted fraud against the University or its new owners.  In 1999, when the new owners claimed that the agreement was actually signed, Dr. Ross was still the owner of the University and, by express written agreement between him and the new owners, the sale of the University was subject to that contract (a copy of which had been provided to the new owners as part of the negotiations for their purchase of the University).

50. The University, nevertheless, failed and refused to pay those sums owned to my firm either as fees or as damages for breach of contract.

51. Whatever the case may be with respect to our firm's

15

legal fees, and whatever the respective rights and obligations are of my firm on the one hand and Ross University on the other vis a vis my firm's fees, such has absolutely no bearing on whether or not your affirmant or my firm  should now be disqualified from representing Neal Simon in this action.

52. The significant fact here is that, as of the early summer, 2000, almost five years ago, both my firm and I ceased all representation of Ross University and of "Dominica Management, Inc.") and had no other business or dealings with either of them except in connection with our dispute over legal fees and damages for breach of contract.

53. Your affirmant is informed, and has learned from Mr. Simon, and I believe from public announcements, that, in May, 2003, The Leeds Group closed on the sale of all of its interests in Ross University and in "Dominica Management, Inc." (although that entity may not have been the entity that my firm and I had represented) to an entity known as DeVry.

54. Defendant American University was formed in January, 2004 and is a competitor of Ross University.

16

55. Defendant Neal Simon was, for most of the period that my firm represented Ross University, and for several years thereafter until May, 2003, when the closing on the sale of Ross University from The Leeds Group to DeVry occurred, the president and general counsel of Ross University.

56. Upon the sale by the Leeds Group to DeVry, Mr. Simon resigned his office and employment with Ross University and began the formation of defendant American University.

57. Plaintiff claims that my firm and I had access to some unspecified confidential and privileged information, relevant to the issues in this case or were likely to have had such access; however, such is clearly not the case.

58. While my firm's representation of Ross University and "Dominica Management, Inc." that form the basis of plaintiff's motion herein ceased over five years ago, all of the alleged events giving rise to each of plaintiff's claims herein purportedly occurred, even according to plaintiff, relatively recently.

59. During the period of our representation of Ross

17

University, our access to confidential information was limited, on a need to know basis, to the matters in which were involved as counsel.

60. None of those matters had any relationship or similarity, to any of the subject matter involved in any of plaintiff's claims in this action.

61. Knowing that such is the case, plaintiff attempts to support its motion by arguing that your affirmant's presentation to the Court at our first conference evidenced my significant knowledge of the how privately owned medical schools such as Ross University function.

62. To suggest, as plaintiff does, that statements made by your affirmant in court during the course of my representation of Mr. Simon in this matter concerning the workings of Ross University and of foreign medical schools in general evidence that I have, or was likely to have had, access to privileged information of plaintiff fails to take into account that my client (as opposed to I) was and is, intimately familiar with all of the subject matter that I discussed in open court.

18

63. Plaintiff's assumption of course, is that counsel does not speak to his client before he represents his client in court.

64. Moreover, there is nothing that I discussed in court that reflected that I have or ever had access to any confidential information of plaintiff (or of Ross University) relevant to any of the issues in this case; nor does plaintiff even attempt to identify what, of anything that I said in court, reflected my access to any such relevant confidential information.

65. Plaintiff's action herein involves four claims:

66. Plaintiff claim that defendants American University of Antigua College of Medicine and Neal Simon, our client, received, at some point in time in 2004, from someone employed by Ross University or plaintiff, confidential information relating to licensing procedures of the University's students in the State of Texas.

67. Neither I nor my firm ever represented either Ross University or "Dominica Management, Inc. in connection with Texas licensing; nor did either of us ever have any involvement with, or access to, any confidential or privileged information with

19

respect either to "strategic plans" of the University or licensing of its graduates in any jurisdiction.

68. Moreover, even had we been so involved, I cannot imagine, (nor has plaintiff demonstrated) that the University's "strategic plans" and confidential information about licensing of its students were the same today as they were five years ago, when my firm and I last represented Ross University.

69. Plaintiff also claims that American University and Neal Simon acquired from a former employee of plaintiff, and were wrongfully using in the course of American University's business, a proprietary computer program developed for Ross University by plaintiff for processing applicants and potential applicants to Ross University.

70. At no time during your affirmant's representation of either Ross University or of "Dominica Management, Inc." did either my firm or I ever have any involvement whatsoever with any computer programs of either of those two entities.

71. At no time were either my firm or I ever privy to Ross University's computer systems; nor do I believe that, at any time

20

during the period that my firm and I provided legal services to Ross University did that entity ever even have a computer program for processing of applicants and potential applicants to the University.

72. Indeed, through my investigation, and plaintiff's own discovery in this matter, I have learned that the specific computer program that underlies plaintiff's claim was not developed until long after my representation of Ross University (and any opportunity that I may have had for access to any of Ross University's "confidential information relating to that program") had ceased.

73. Neither I nor my firm had ever represented, knew, or even met, Mr. Weltman, prior to plaintiff's commencement of the within action. According to plaintiff's own complaint, the alleged events giving rise to their claims concerning Ross University's computer program occurred several years after my representation of Ross University and of "Dominica Management, Inc." had ended.

74. Thus, there can be no question that there exists no substantial relationship between any of the subject matter of any

21

of my representation of Ross University (and of "Dominica Management, Inc.") and any of the issues presented by plaintiff with respect to its claims relating to Ross University's computer program and/or the licensing of its graduates in Texas or elsewhere.

75. Plaintiff also claims that defendants American University and Neal Simon, through improper means, gained access to confidential information of plaintiff consisting of the identities of applicants for admission to Ross University who that University had rejected. Plaintiff claims that the alleged confidential information was current; i.e. consisted of the names of students who had recently applied for admission to the University.

76. At no time did the representation of my firm or I ever involve the admission process for applicants for admission to Ross University, rejected or otherwise, or the recruitment of such applicants.

77. Once again, plaintiff's claims with respect to rejected student applicants of Ross University involves events that are alleged to have occurred years after my representation of Ross

22

University (and of "Dominica Management, Inc.") had come to an end.

78. Once again, plaintiff can not establish any relationship whatsoever between my former representation of Ross University and/or of "Dominica Management, Inc." and any of the issues that may arise in the litigation of plaintiff's claims regarding American University's alleged access to the identities of respective applicants for admission to Ross University.

79. Likewise, plaintiff has not established, and cannot establish, that either your affirmant or my firm has, or was likely to have had, any access to any confidential information of plaintiff relating to alleged rejected applicants for admission to Ross University.

80. Plaintiff's final claim in its action herein is that American University copied the student handbook of Ross University in violation of plaintiff's alleged copyright.

81. The handbook in question is American University's 2004 student handbook. It did not come into existence until 2004, long after my firm's representation of Ross University and of

23

"Dominica Management, Inc." ended.

82. Neither I nor or my firm had any involvement whatsoever in connection with the drafting or publication of either American University's or Ross University's student handbooks during the last several years, all of which, in any event, are public records readily available to anyone who chooses to obtain them.

83. Thus, again, plaintiff cannot establish any relationship whatsoever between my firm's prior representation of Ross University and/or of "Dominica Management, Inc." and any of the issues that may arise in connection with plaintiff's claims of copyright infringement.

84. In summary, then, plaintiff has not established and cannot establish, any relationship whatsoever between any of the subject matter of my firm's representation of Ross University and/or of "Dominica Management, Inc." and any of the issues involved in this action.

85. Likewise, plaintiff has utterly failed to established that either your affirmant or my firm have, or were likely to

24

have had, access to any confidential information of plaintiff (or of Ross University) relevant to any of the issues in this matter.

86. The operative word in the third element of the three elements that plaintiff affirmatively recognizes it must establish to succeed on its motion herein is "relevant".

87. More significant than the fact that plaintiff cannot establish any relationship between my firm's prior representation of either "Dominica Management, Inc." or Ross University and any of the issues involved in the instant matter or that my firm or I have, or were likely to have had, access to any relevant confidential information is the fact that plaintiff has made no real attempt, on its motion, to do so.

88. Plaintiff goes on its length in its motion papers to explain the nature of my firm's former representation of Ross University; however, plaintiff utterly fails even to attempt to link any of the subject matter of that alleged representation to any of the issues in this case or to identify any "confidential information" relevant to any of the issues in this case to which my firm or I have, had, or could have had, any access through my

25

former representation of Ross University.

89. Defendants have maintained, from the outset of this litigation, that the litigation is frivolous and was brought solely for the purpose of chilling American University in its competition with Ross University and in order to cause American University, a startup entity with limited resources, to expend those resources to defend itself from plaintiff's claims.

90. Plaintiff's motion herein appears to be consistent with that bad faith purpose.

91. This is particularly true when it is considered that whatever access I or my firm may have had during the course of our long ago terminated prior representation of Ross University, that information pales in comparison to the information about Ross University and/or "Dominica Management, Inc." that Mr. Simon, himself an attorney, acquired and had access to, during the period that he was president and general counsel of Ross University.

92. Whoever counsel who may represent Mr. Simon in this

26

action is, he will, most certainly, have access to Mr. Simon's own knowledge.

93. Plaintiff's instant motion evidences more their bad faith motives in bringing and maintaining this action and their attempts at vengeance against your affirmant arising out of our dispute over the legal fees owed my firm than it reflects any real concern on plaintiff's part that my representation of Mr. Simon will, somehow, give Mr. Simon unfair advantage over plaintiff in this lawsuit.

WHEREFORE, your affirmant on behalf of Mr. Simon respectfully demands that plaintiff's motion be summarily denied and that defendants and your affirmant be awarded our costs, disbursements and legal fees incurred in connection with this matter together with such other and further relief as this Court deems just, proper and equitable.

Dated:     March 4, 2005
           New York, New York


_____
LEONARD A. SCLAFANI

27