UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

DOMINICA MANAGEMENT, INC.,

              Plaintiff,

      -against-

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE, NEAL S.
SIMON and SOL WELTMAN,

             Defendants.

------------------------------X

**REPLY AFFIDAVIT IN SUPPORT
OF MOTION TO DISQUALIFY**

File No. 04-CV-7675
(Berman, J.)
(Maas, M.)

STATE OF NEW JERSEY)
                     ss:
COUNTY OF MIDDLESEX)

    JOHN T. ST. JAMES, being duly sworn, deposes and says:

    1.    I am Vice President and Chief Financial Officer of plaintiff Dominica Management, Inc. ("DMI"). This affidavit is addressed to two specific claims in the answering papers, viz:

        a.   defendant Simon's contention in paragraph 7 of his affidavit that the "Dominica Management, Inc." that is the plaintiff in this action is not the same corporation that "holds the shares of an offshore company that, in turn, holds Ross University School of Medicine and Ross University School of Veterinary Medicines (sic) shares." It is my under-standing that the grandparent corporate relationship between DMI and Ross University is important to this motion because

- 1 -

DMI, the plaintiff, is seeking to disqualify P&S because of its multi-year prior outside general counsel relationship with Ross University, the subsidiary;

      b.  defendants Simon's contention as set forth in paragraphs 37 and 47 through 49 of the Sclafani affirmation that his firm had "a five year non-terminable (except for cause) retainer agreement" at $10,000.00 per month, that his firm was discharged "without cause," that the retainer agreement was signed by Dr. Ross when he (Dr. Ross) still owned Ross University and that his subsequent sale of his interests in DMI and the Ross Universities "was subject to that contract (a copy of which had been provided to the new owners as part of the negotiations for their purchase of the University)".

      The retainer agreement is significant in this motion, not because it ever was a binding agreement for future legal services, but because it recited the extent of legal services that P&S had rendered to Ross University during the prior several years.  Mr. Sclafani does not address that specific issue in his affirmation but instead appears to assert that the agreement is a binding obligation of Ross University to pay his firm $600,000.00 over five years and that Ross University improperly terminated that agreement, obviously setting the framework for a breach of

contract action by Mr. Sclafani's firm against Ross University some time in the future.

## A.   PLAINTIFF DMI IS THE SAME CORPORATION INCORPORATED BY SCLAFANI AND IS THE GRANDPARENT OF ROSS UNIVERSITY

2.   Having been the financial officer of DMI since 1998, I can categorically state that there is only one corporation with the name of "Dominica Management, Inc." affiliated by contract, stock ownership or otherwise with Ross University.  That corporation is the plaintiff in this action.

3.   DMI was incorporated in the State of New York in 1997 by Polatsek & Sclafani ("P&S").

4.   DMI was formed primarily to provide administrative services in the United States to Ross University and its affiliate veterinary college.

5.   The Administrative Services Agreement executed in or about November, 1997, effective on January 1, 1998, attached to my affidavit in support of this motion as Exhibit "F", memorialized the relationship between DMI and Ross University.  This Agreement has not been terminated and is still in full force and effect today.

6.   As of April 13, 2000, Dr. Robert Ross, the sole shareholder of DMI and the owner of both Ross University School of Medicine and Ross University School of Veterinary

Medicine, transferred 90 percent of his interest in DMI and the Ross University entities pursuant to a Recapitalization Agreement between Dr. Ross and the two investment corporations.

7.   On December 13, 2000, Ross University Services, Inc. ("RUSI") was incorporated in Delaware.

8.   On January 3, 2001, Ross University Management, Inc. ("RUMI") was incorporated in St. Lucia.

9.   After the new corporations were created, RUMI owned Ross University School of Medicine, a Dominica corporation; RUSI owned RUMI; and DMI owned RUSI.

10.   In 2003 DeVry, Inc. acquired DMI and Ross University.  A chart reflecting the present chain of ownership between DeVry, Inc. and Ross University through a series of intermediary wholly-owned subsidiaries, including DMI, is attached hereto as Exhibit "A".

11.   Defendant Simon, was on the Board of Directors of DMI from its inception in 1997 until the investment company owners reconstituted the Board on July 24, 2000. Subsequently, he served as corporate secretary, attended Board meetings and wrote the Board minutes for DMI until his departure at the time of DeVry's acquisition of the corporations.  He also served as President of Ross University School of Medicine until December 16, 2002 and certainly knew

who was the owner of the corporation. Simon was part of the planning team that developed the plan for the recapital- ization.

12.    However, P&S and Simon appear to argue that there was a separate New Jersey corporation formed in September, 2002 which Simon claims is, or may be, the plaintiff in this action.  The basis for that assertion is attached to defendants' opposition papers as Exhibit "A".  In fact, no new corporation was formed under the name of "Dominica Management, Inc."  Instead, on September 10, 2002, in connection with the move of DMI's office from New York to New Jersey, a certificate was filed with the State of New Jersey authorizing DMI, a New York corporation, to do business in New Jersey.  A copy of this status report from the New Jersey State Business Gateway Service reflecting the foregoing is attached hereto as Exhibit "B".

13.    There should be no dispute that the plaintiff DMI is the same DMI incorporated in New York by P&S in 1997, sold in 2000 to investors, and acquired in 2003 by DeVry, Inc. DMI remains the indirect owner of Ross University.  This relationship is sufficient to sustain a motion to disqualify.

B.  **THE RETAINER AGREEMENT**

14.    Sclafani, counsel for P&S, admits in his affidavit that Ross University, prior to the formation of DMI in 1997,

was represented by P&S since the firm's formation in or about 1985. He admits that the "scope and quantity of the representation that [P&S] provided to Ross University steadily increased" and went from collection matters to such diverse and highly personal matters as civil rights and tax. In addition, he admits that P&S assisted in the incorporation of DMI. See Sclafani Aff. Para. 21-23.

15.   When DMI and Ross University were sold in 2000 to investors, Sclafani contends that P&S was in the midst of year two of a five-year non-terminable Retainer Agreement, a copy of which is attached to my moving affidavit as Exhibit "G". I am aware of the circumstances surrounding the creation of the Retainer Agreement.

16.   In the fall of 1999, prior to the sale to the new investors in 2000, I was directed to gather all Ross University contracts. My search did not reveal any agreements with Ross and/or DMI and P&S. A few months later, I was presented with the Retainer Agreement which bore a date of October 1, 1998. My further investigation revealed that the agreement was signed, not by Dr. Ross, but by a DMI employee who signed the document at Dr. Ross' direction in his name in or about December, 1999, and backdated it to October 1, 1998.

17.   Robert Ross was terminated, among other reasons,

- 6 -

for "submitting a fraudulent [retainer] agreement and asking [DMI] to honor this agreement."  See letter from former President of Ross University and DMI, Timothy Foster, to Robert Ross dated October 6, 2000, attached hereto as Exhibit "C".

18.  In any event, Mr. Sclafani now claims that he is due and owing under that agreement the $50,500.00 amount in the consolidated invoice that was submitted to the new owners but was never paid. See Sclafani Aff. Para. 45.  This is contrary to his previous assertion that the Retainer Agreement was an agreement under which P&S was to be "paid in the future for services that had already been rendered and accepted," i.e., $600,000.00.  See Exhibit "C" to my affidavit in support of this motion.

19.  The nature of Sclafani's and P&S' fee dispute with plaintiff alone should preclude P&S from representation of Simon in this action and, in any event, that document bears witness to the extent and scope of the services that P&S was providing for several years to Ross.

JOHN T. ST. JAMES

Sworn to before me this
  day of March, 2005.

Notary Public

I.D.# 2319180

KEISHA COLE
Notary Public
Union County, State of New Jersey
My Commission Expires September 07, 2009

- 7 -