```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

DOMINICA MANAGEMENT, INC.,

                Plaintiff,

    -against-                                File No. 04-CV-7675
                                             (Berman, J.)
AMERICAN UNIVERSITY OF ANTIGUA               (Maas, M.)
COLLEGE OF MEDICINE, NEAL S.
SIMON and SOL WELTMAN,

                Defendants.

----------------------------------------------------------X
```

**PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER SUPPORT
OF ITS MOTION TO DISQUALIFY POLATSEK AND SCLAFANI
AS COUNSEL FOR DEFENDANT NEAL S. SIMON**

**STATEMENT OF FACTS**

The facts are fully set forth in both the moving and reply affidavits of John T. St. James and will not be repeated herein for the sake of brevity.

**ARGUMENT**

**POINT I**

**P&S WAS FORMER COUNSEL TO DMI AND TO ROSS UNIVERSITY
THUS, P&S SHOULD BE DISQUALIFIED
FROM REPRESENTING DEFENDANT SIMON**

As stated in plaintiff's moving memorandum of law, disqualification is appropriate even when the adverse party's counsel represented a part owner of the party seeking disqualification. See Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562 (2d Cir. 1973). Similarly, on a motion

-1-

to disqualify, the relationship between a parent corporation and its subsidiary is sufficient for the subsidiary to be considered the former client of the attorney who had previously represented the parent.  See Decora Inc. v. Wallcovering, Inc. et al., 899 F. Supp. 132 (S.D.N.Y. 1995).

**A.      The History of DMI**

DMI, represented by P&S, was incorporated in the state of New York in 1997.  It was formed primarily to provide administrative services in the United States to Ross University and its affiliate veterinary college.  In or about July, 2000, Robert Ross, the sole shareholder of DMI and the owner of Ross University School of Medicine and Ross University School of Veterinary Medicine sold his interest in DMI and in Ross University to two investment corporations.  The new investors created a tax structure that resulted in DMI becoming the parent corporation of entities that in turn owned Ross University School of Medicine and Ross University School of Veterinary Medicine.  On September 10, 2002, in connection with the move of DMI's office from New York to New Jersey, a certificate was filed with the State of New Jersey authorizing DMI, a New York corporation, to do business in New Jersey.  In 2003, DeVry, Inc. acquired DMI and the Ross Universities.  Thus, the DMI that was incorporated in 1997 by P&S is the same DMI that is the plaintiff in this action.

**B.      Parent-Subsidiary Relationship is Sufficient for Disqualification**

As described in the reply affidavit of John T. St. James, DMI is an indirect owner of Ross University.  Attached to the St. James reply affidavit as Exhibit "A" is an outline of the corporate structure of DMI.

DMI provides administrative services to Ross University in the United States, is responsible for providing legal representation for Ross University.  DMI owns substantially all of

Ross University, and as such, P&S' representation of DMI's subsidiary is sufficient for DMI to be considered a former client of P&S, i.e. the attorneys who had previously represented its subsidiary.  See Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562 (2d Cir. 1973).  To find otherwise would be "to exalt form over substance."  See See Decora, 899 F. Supp. at 137, citing, Baxter Diagnostics, Inc. v. AVL Scientific Corp., 798 F.Supp. 612 (C.D. Cal. 1992).

      Sclafani admits in his affidavit in opposition to this motion to disqualify that he and his firm "did represent Ross University School of Medicine in connection with numerous matters over a period of many years" and that the scope of that representation increased in complexity from the run-of-the-mill collection matters.  See Sclafani affidavit at para. 5 and 22-23.  He also admits that he incorporated DMI and did represent DMI with other defendants in a suit by the former registrar of Ross University.  Finally, he admits that the "scope and quantity" of P&S' representation increased to encompass complex civil rights matters, tax matters and Ross University obligations regarding its charter.  See Sclafani affidavit at para. 23.  However, P&S claims that during its "minimal" representation of DMI, DMI's only relationship with Ross University was contractual.  See Sclafani affidavit at para. 5.

      DMI exists and has always existed to provide administrative services to the school and its veterinary school affiliate and as such is and always was intimately involved with all legal representations of Ross University.  Whether at the time of P&S' representation of DMI the relationship between Ross University and DMI was contractual, stock ownership or some other relationship is irrelevant.  For example, in Decora Inc., 899 F. Supp. at 137, the court, in finding that prior representation of plaintiff's parent constituted representation of plaintiff's subsidiary cited a California case, Baxter Diagnostics, *supra*, to describe how a corporate merger and

acquisition of a new name, did not prevent disqualification of a law firm from representing a party in a matter adverse to the new entity, when that law firm had previously represented a corporation that merged with the new entity.  See also Hartford Accident and Indemnity Co. v. RJR Nabisco, Inc., 721 F. Supp. 534, 539-540 (finding on a motion to disqualify that plaintiff's law firm which previously represented defendant corporation's subsidiary would be deemed to have previously represented defendant parent corporation).  Since DMI's subsidiary, Ross University, was formerly represented by P&S on substantially related matters disqualification is warranted.

## POINT II

### POLATSEK AND SCLAFANI OBTAINED SUBSTANTIALLY RELATED INFORMATION BUT IT IS IRRELEVANT THAT SIMON MAY ALSO BE A SOURCE OF THAT INFORMATION

**A. P&S' Former Representation of Ross and DMI is Substantially Related to P&S' Current Representation**

As set forth in plaintiff's moving memorandum of law, this Court has recognized that "ascertaining the substantiality of a relationship between two representations is more difficult, however, when the former representation entailed not litigation but general background legal work."  See United States Football League, et al. v. Nat'l Football League, et al., 605 F. Supp. 1448 (S.D.N.Y. 1985).  The test, similar to the substantially related test, is "whether facts which were necessary to the first representation are necessary to the present litigation."  See Guerrilla Girls, Inc. v. Donna Kaz, 2004 U.S. Dist. LEXIS19969 (S.D.N.Y. 2004).  While general knowledge of the movant's business affairs and background is not in itself a basis of disqualification, if the litigation deals with the movant's "market behavior" then the attorney's

knowledge of "business plans, economic organization, prospective market position and other such background information of the movant becomes relevant." Id. at 1460.

The Complaint in this action essentially alleges that AUA and DMI are competing medical schools providing foreign medical school services to potential physicians planning to practice in the United States.  This encompasses a certain market of students that would choose to attend a foreign medical school.  Thus, the allegations in the complaint of improper and illegal contacts with DMI employees by Simon and AUA designed to obtain DMI's confidential and proprietary information and trade secrets to bolster AUA's presence as a medical school is central to this case as are the inner workings of a foreign medical school.

The Retainer Agreement[1] by its terms recognized that there had been a long relationship between P&S on the one hand and Ross University and necessarily DMI on the other, and contemplated a future five year agreement to provide "legal advice, counsel, research, negotiation and representation" just as that firm had provided in the past.  Thus, P&S will have knowledge of DMI's strategies and position in the market that would be relevant to a defense of Neal Simon making P&S' former representation substantially similar to its current representation.  Furthermore, and as described in Point I, *supra*, P&S admits (a) to representing Ross University in numerous matters over numerous years; (b) that the breadth of those matters increased in complexity and quantity; and (c) that P&S incorporated DMI and represented DMI in at least one matter.  In addition, and as set forth in the moving memorandum of law, one

---

[1] To the extent that P&S seeks recovery of legal fees for alleged termination of the Retainer Agreement "without cause," it should be noted that as a rule, a client has an absolute right to discharge his attorney at any time with or without cause therefore regardless of the contract between them because the client's absolute right of termination is treated as an implied term of the contract.  See Martin v. Camp, 219 N.Y. 179, 114 N.E. 46 (1916).

matter, in which P&S represented Ross University and necessarily DMI as a defendant, involved issues regarding Ross University's academic standards for its current students. As part of the defense of Ross University, confidences regarding Ross University's academic standards and requirements for its students were communicated to P&S. Since this type of proprietary information is at issue in this case, and since P&S has intimate knowledge of the affairs of Ross University through its extensive representation of Ross, the matters are substantially similar.

**B.     Access to Confidential Information**

P&S essentially argues in opposition to this motion that a) there is no actual proof that P&S had access to confidential information of DMI and/or Ross; and b) in any event plaintiff "fails to take into account that [Simon] as opposed to [P&S] was and is, intimately familiar with all of the subject matter" regarding DMI and Ross University's inner workings. See Sclafani affidavit at paragraph 62. These arguments fly in the face of the Canons of Ethics. First, the party moving to disqualify counsel is not required to prove that an attorney had access to or received privileged information. See Government of India et al. v. Cook Indus., Inc., 569 F.2d 737 (2d cir. 1978). There is a presumption, albeit rebuttable, of communication of client confidences implicit in the substantial relationship test. See Decora, 899 F. Supp. at 137. Second, and as stated by this Court in Marco v. Dulles, et al., 169 F. Supp. 622, 629 (S.D.N.Y. 1959):

> The words 'confidence' and 'confidences' as used in Canons
> 6 and 37 include more than specific matters of fact or
> information which come to the lawyer on a confidential basis.
> They include also intangibles arising form the very nature
> of the lawyer-client relationship which result from mutual
> discussion of the problems facing the client, consideration

>of the problems by counsel and the advice given thereon,
>the rationale of the solutions proposed and the legal
>techniques by which such solutions are arrived …

In <u>Marco v. Dulles</u>, the attorneys opposed a motion to disqualify them from representing the defendant former directors in an action adverse to the former director's corporation, which the attorneys had previously represented.  The attorneys took the position that there could be no breach of confidences since the directors, by virtue of their status as former directors, maintained the confidences of the corporation.  As such, the attorneys argued there could be no confidences that the attorneys couldn't obtain from their clients own knowledge.  The court declined to deny the motion to disqualify on these grounds.  It held:

>the disclosure or use of confidences is forbidden 'even though
>there are other available sources of such information' … And
>this is true 'although all of the information obtained by the
>attorney from his former client may be available to his
>present client …'"

<u>Id</u>. at 630 (citing Canon 37 and <u>Fleischer v. A.A.P., Inc</u>., 163 F. Supp. 548, 551).  Thus, P&S cannot hide behind the knowledge of its client to avoid disqualification.

## **CONCLUSION**

For all the reasons stated herein, and in the moving and reply affidavits of John T. St. James, as well as plaintiff's moving Memorandum of Law, plaintiff respectfully requests that its motion to disqualify counsel be granted in its entirety.

Dated: Garden City, New York
       March 10, 2005

                              Respectfully submitted,

                              CULLEN AND DYKMAN LLP


                          By:/s/ Jennifer A. McLaughlin
                              JENNIFER A. MCLAUGHLIN (JM 5678)
                              Attorneys for Plaintiff
                              100 Quentin Roosevelt Boulevard
                              Garden City, New York 11530
                              (516) 357-3700


Jennifer A. McLaughlin
Peter J. Mastaglio
  Of Counsel