UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

DOMINICA MANAGEMENT, INC.,                     :

                Plaintiff,                      :

                                                  **MEMORANDUM**
     -against-                                     :      **DECISION AND ORDER**

AMERICAN UNIVERSITY OF                         :      04 Civ. 7675 (RMB)(FM)
ANTIGUA COLLEGE OF MEDICINE,
NEAL S. SIMON and SOL WELTMAN,                 :

                Defendants.            :

-----------------------------------------------------------x

**Frank Maas,** United States Magistrate Judge.

       This lawsuit involves two competing medical schools in the Carribean: Ross University School of Medicine ("RU"), located on the island of Dominica, and the American University of Antigua College of Medicine ("AUA"), on the island of Antigua. The suit was commenced by Dominica Management, Inc. ("DMI"), which previously had a management contract to provide services to, and now is also an indirect owner of, RU. The matter comes before the Court on DMI's motion to disqualify Leonard A. Sclafani, Esq., and his firm, Polatsek & Sclafani ("P&S"), from any further representation of one of the defendants in this case. For the reasons set forth below, that motion is denied.

I.      Background

RU has been in operation for 27 years. (Aff. of John T. St. James, sworn to Feb. __, 2005 ("SJ-I"), ¶ 5).[1] AUA was formed in 2001, held its first classes in 2004, and can fairly be described as an unwelcome competitor of RU. (See id. ¶ 9). The complaint names three defendants: AUA; Neal S. Simon ("Simon"), the President of AUA, who previously served as President and General Counsel of RU and as an employee of DMI; and Sol Weltman ("Weltman"), whom the complaint describes as a former computer programmer in the information technology department of DMI. (Compl. ¶¶ 5, 24-28, 38-40).

The complaint alleges, inter alia, that AUA and Simon (a) wilfully infringed RU's 2002 Student Handbook, which was copyrighted by DMI; (b) misappropriated a proprietary DMI computer system developed by Weltman and other DMI trade secrets; (c) aided and abetted breaches of the duty of loyalty owed to DMI by its employees; and (d) engaged in unfair competition. (Id. ¶¶ 47-85). Because the parties agreed to engage in limited document and deposition discovery so that DMI could determine whether there was a basis to seek a preliminary injunction, the defendants have not answered and their counsel have yet to enter formal notices of appearance in this case.

---

[1] Mr. St. James has submitted two affidavits to the Court. Both documents are notarized, but the notary public did not fill in the dates that Mr. James appeared before her. (See SJ-I at 15; Aff. of Mr. St. James, dated Mar. __, 2000 ("SJ-II"), at 7).

The first witness deposed by AUA was Weltman. At the outset of that deposition, Mr. Sclafani stated for the record that the full scope of his engagement had yet to be determined, but that he was representing Simon "[f]or the purposes of this deposition" because there appeared to be a conflict between Simon and AUA. (SJ-I, Ex. B at 9-10). The other attorneys attending the deposition – including AUA's counsel – appear not to have voiced any objection to this arrangement. (See id.). Thereafter, however, DMI's counsel wrote to Mr. Sclafani to ask that he and P&S withdraw from the case because they previously had represented both RU and DMI. (Id. Ex. C). The letter from DMI's attorney noted that Simon himself also had been "of counsel" to P&S. (Id.). After Mr. Sclafani declined the request, (id. Ex. D), DMI filed this motion to disqualify him and his firm from further representation of Simon.

The motion is now fully submitted. (See Docket Nos. 11-17). Because the parties agree as to the applicable legal principles, Simon has not submitted a memorandum of law as part of his opposition papers.

II.     Relevant Facts

Mr. Sclafani began to represent RU in the mid-1980s, at first individually, and soon thereafter through P&S, his newly-formed firm. (Affirm. of Leonard A. Sclafani, Esq., dated Mar. 4, 2005 (Sclafani Affirm."), ¶ 21). At the outset, the firm's work for RU consisted of bringing collection actions, dealing with landlord-tenant matters, and the prosecution and defense of suits involving suppliers. (Id. ¶ 22). Over

time, the firm added to its repertoire the defense of civil rights actions brought by students, tax advice, and corporate work.  (Id. ¶ 23).  This representation continued until the spring of 2000.  (Id. ¶ 24).

In 1997, P&S incorporated DMI in New York State at the request of Dr. Robert Ross, the President of RU.  (See id. ¶¶ 27-28; SJ-I ¶¶ 24, 28 & Ex. E).  Dr. Ross was also the sole shareholder of DMI.  (SJ-II at ¶ 6).

In 2000, Dr. Ross sold his controlling interest in both RU and DMI to The Leeds Group ("Leeds"), an investment banking firm.  (Sclafani Affirm. ¶ 34; SJ-II ¶ 6).  Some time prior to the sale, Dr. Ross entered into a retainer agreement ("Retainer Agreement") with P&S on behalf of RU.[2]  (SJ-I Ex. G).  The Retainer Agreement provided for P&S to act as RU's "general outside counsel and legal representative."  (Id.).  The Agreement further provided for RU to pay P&S $10,000 per month over a five-year period for legal services, and stated that it could be terminated only for "cause," which was defined as "malpractice, fraud, deceit or dishonesty," or the death or disability of Mr. Sclafani.  (Id.).  The Agreement was prepared on P&S letterhead, which discloses that, in addition to his other roles, Simon was "of counsel" to P&S.  (Id.).

Although Mr. Sclafani alleges that the sale of RU was expressly made subject to the Retainer Agreement, The Leeds Group declined to continue the retainer

---

[2]   Mr. Sclafani maintains that the Retainer Agreement was signed in October 1998. (See Sclafani Affirm. ¶ 37; SJ-I Ex. G).  DMI maintains that the Agreement actually was signed in December 1999, but was backdated, and that the signature which Dr. Ross says is his was placed on the Agreement by someone else at Dr. Ross's instruction.  (SJ-II ¶ 16 & Ex. C).

arrangement following its acquisition of RU.  (Sclafani Affirm. ¶¶ 43, 49).  As a consequence, by early summer 2000, P&S had ceased all representation of RU and DMI.  (Sclafani Affirm. ¶ 52).  Indeed, the only potential legal matter that tied them together was a dispute as to P&S's entitlement to recover the legal fees that it contends remain unpaid pursuant to the Retainer Agreement.  (Id.).

In 2003, Leeds sold RU and DMI to DeVry, Inc.  (Id. ¶ 53; SJ-II ¶ 10).  It appears that Simon left RU after this second sale occurred and began the steps necessary to form AUA.  (Sclafani Affirm. ¶¶ 55-56).  Ross remained and was a DMI employee until October 6, 2000, when he was terminated.  (SJ-II at 17 & Ex. C).  The termination letter states that Ross was fired because of his "dishonesty in submitting a fraudulent [Retainer A]greement to [DMI] and asking [DMI] to honor that [A]greement."  (Id. Ex. C).

II.     Discussion

    A.     Disqualification

As the Second Circuit has noted, disqualification motions interfere with the ability of parties to choose their own counsel, often are employed for tactical reasons, and, even in the best of circumstances, cause delay.  Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979); Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir. 1978).  Accordingly, a party moving for disqualification carries a "heavy burden," Evans v. Artek Sys. Corp., 715 F.2d 788, 794 (2d Cir. 1983), and must satisfy a "high standard

of proof." Gov't of India, 569 F.2d at 739. Although the conclusion in any particular case "can be reached only after painstaking analysis of the facts and precise application of precedent," United States v. Standard Oil Co., 136 F. Supp. 345, 367 (S.D.N.Y. 1955), the question ultimately is one of preserving the public's trust in the "scrupulous administration of justice and in the integrity of the bar." Hull v. Celanese Corp., 513 F.2d 568, 572 (2d Cir. 1975). For that reason, any lingering doubt must be resolved in favor of disqualification. Id. at 571.

In this case, DMI contends that disqualification is mandated because Mr. Sclafani and P&S, who represent Simon, previously had served as counsel for RU and DMI. To prevail on such a claim, DMI must make a three-part showing that:

> (1) the movant is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

Evans, 715 F.2d at 791.

This "substantial relationship" test first was promulgated by Judge Weinfeld in T.C. Theatre Corp. v. Warner Bros. Pictures, Inc., 113 F. Supp. 265, 268 (S.D.N.Y. 1953). See Leber Assocs., LLC v. Entm't Group Fund, Inc., No. 00 Civ. 3759 (MHD),

2001 WL 1568780, at *3 n.5 (S.D.N.Y. Dec. 7, 2001).  The test gives effect to the proscriptions in Canons 4 and 5 of the New York Code of Professional Responsibility against an attorney's improper use of the confidences of a former client to the former client's disadvantage.  See Battagliola v. Nat'l Life Ins. Co., No. 03 Civ. 8558 (AJP), 2005 WL 101353, at *7 (S.D.N.Y. Jan. 19, 2005) (quoting Cleverly Minded Ltd. v. Anthony Sicari Apparel Group Indus., Inc., No. 02 Civ. 4489 (FM), 2003 WL 161317, at *2 (S.D.N.Y. Jan. 23, 2003)); Leber Assocs., 2001 WL 1568780, at *3; N.Y. Code of Prof. Resp., Canons 4 & 5, D.R. 4-101(B) & 5-108(A).  The test, however, does not mandate disqualification.  Rather, when the movant has made all three required showings, the Court may, but is not required to, exercise its discretion to disqualify opposing counsel.  Battagliola, 2005 WL 101353, at *16.

        1.    Former Client

As noted earlier, this suit is brought in the name of DMI, not RU.  In an effort to show that this plaintiff is not P&S's former client, Mr. Sclafani has furnished the Court with a printout from an information website which suggests that another DMI entity was incorporated in New Jersey on September 10, 2002. (Sclafani Affirm. ¶¶ 11-13 & Ex. A).  The reliability of the website that generated the report supplied by Mr. Sclafani has not been established.  Nevertheless, Mr. Sclafani alleges on the basis of the printout that the duties previously performed by the company that he incorporated are now being handled by the New Jersey corporation, which never was his client.  (Id.).

Contrary to Mr. Sclafani's speculation, the complaint in this action plainly states that the plaintiff is a New York corporation which is headquartered in New Jersey. (Compl. ¶ 4). Furthermore, DMI contends that what actually occurred in New Jersey on September 10, 2002, is that DMI filed a certificate authorizing it to do business in New Jersey as a <u>foreign</u> corporation. (<u>See</u> SJ-II ¶ 12 & Ex. B). Even if one were to assume that a New Jersey DMI corporation exists, Mr. Sclafani's assertions regarding its alleged role in this case are amply refuted by the reply affidavit of Mr. St. James, DMI's Vice President and Chief Financial Officer, who confirms that the DMI entity previously incorporated by P&S in New York State is the plaintiff in this action by reason of its indirect ownership of RU. (SJ-II ¶¶ 12-13).

It is undisputed that P&S previously represented the DMI entity incorporated in New York in a lawsuit against that entity and RU brought by RU's former registrar, who claimed that he was owed pension benefits. <u>See</u> <u>Friedenberg v. RU</u>, Index No. 600133/01 (Sup. Ct. N.Y. County).³ Accordingly, because the DMI entity bringing the present claim was a former client of P&S, the first element of the showing necessary to disqualify a party's former counsel is satisfied.

P&S argues that any representation that it may have provided to DMI did not extend beyond the defense of the <u>Friedenberg</u> pension benefits suit. (Sclafani Affirm. ¶¶ 32-33). To satisfy the first element of the <u>Artek</u> test, however, a party need not

---

³ In his papers, Mr. Sclafani incorrectly refers to the plaintiff in that action as "Friedberg." (<u>See</u> Sclafani Affirm. ¶ 38).

demonstrate that an ongoing attorney-client relationship was formed; rather, the question is "whether there exist sufficient aspects of an attorney-client relationship for purposes of triggering inquiry into the potential conflict." Moss v. Moss Tubes, Inc., No. 96 Civ. 1407, 1998 WL 641362, at *5 (N.D.N.Y. Sept. 9, 1998) (quoting Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 749 (2d Cir. 1981) (internal quotation marks omitted)).  For this reason, courts have found a sufficient relationship when a law firm performs services for the alter ego of its former client.  See, e.g., Guerrilla Girls, Inc. v. Kaz, No. 03 Civ. 4619 (LLS), 2004 WL 2238510, at * 3 (S.D.N.Y. Oct. 4, 2004) (attorney's representation of unincorporated association deemed "tantamount to . . . representation of each of its members"); Moss, 1998 WL 641362, at *5 (finding "sufficient aspects of an attorney-client relationship" where there was a "unity of interest" between the plaintiff and defendant); Hartford Accident & Indem. Co. v. RJR Nabisco, Inc., 721 F. Supp. 534, 538-40 (S.D.N.Y. 1989) (law firm deemed to have represented defendant based on prior representation of defendant's subsidiary during which defendant played an active role).

    In this case, although DMI was created to provide "administrative services for RU in the United States," the relationship between the two entities obviously was and is close.  Thus, Dr. Ross, who was the owner of RU, engaged P&S to form DMI.  (SJ-II ¶ 3; Sclafani Affirm. ¶ 6).  Following its formation, Dr. Ross also controlled both DMI and RU.  (Affirmation of Neal S. Simon, dated March 4, 2005, ¶ 3).  Moreover, the relationship between RU and DMI was spelled out in considerable detail in an

Administrative Services Agreement, dated November 27, 1997, which Dr. Ross signed in his capacity as Chairman of DMI. (SJ-I ¶ 26, Ex. F). The Agreement provided, among other things, that DMI shall arrange for the provision of professional assistance to [RU] through accountants, attorneys, and other advisors. (SJ-I Ex. F, § 1.2.10). Pursuant to the Agreement, DMI also was assigned the responsibility of making payments to "trade accounts" and for "all other United States obligations incurred by [RU]." (Id. § 1.2.8(a)). Thus, even if P&S did not work directly for DMI in connection with other litigations against RU in the United States, DMI presumably played a role in the retention of other outside counsel representing RU and the payment of their fees.

In these circumstances, although P&S evidently performed most of its services for RU, DMI has established indicia of an attorney-client relationship sufficient for the Court to inquire further into the alleged conflict of interest.

2. Substantial Relationship

In addition to the Friedenberg pension suit, P&S defended two other lawsuits for RU which Mr. Sclafani has specifically identified. In Babiker v. RU, P&S defended a suit brought pro se by a former RU student who contended that the decision to expel him was discriminatory. RU was granted summary judgment in that case. See Babiker v. RU, No. 98 Civ. 1429 (THK), 2000 WL 666342 (S.D.N.Y. May 19, 2000). In the second case, New York v. RU, No. L-00138-99 (Sup. Ct. Albany County), P&S represented RU in connection with charges that it had failed to comply with New York

10

State's lobbying statutes. (Sclafani Affirm. ¶ 41). Mr. Sclafani also indicates that in the early years of his representation of RU, he and his firm handled suits concerning unpaid tuition, landlord-tenant matters, and suits for or against suppliers. (Id. ¶ 22). Near the end of its representation of RU, P&S also provided an opinion letter to Price Waterhouse Coopers LLP in connection with Dr. Ross's sale of RU to Leeds. (Id. ¶ 42; SJ-II Ex. H at 2).

When a disqualification motion is based, as here, on counsel's prior representation of his client's adversary in a lawsuit, the movant must show that the substantial relationship between the issues in the past and present cases is "patently clear." Gov't of India, 569 F.2d at 739-40 (quoting Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 518 F.2d 751, 754-56 (S.D.N.Y. 1975)). This requires proof that the issues involved are "identical" or "essentially the same." Id. at 740. As Mr. Sclafani correctly notes, however, there is no clear identity of issues between this case and the cases in which he previously defended RU and DMI. Moreover, to the extent that Mr. Sclafani became aware of DMI's general litigation strategies during his prior representation of RU/DMI in lawsuits, it does not appear that he will have any special insight into how DMI will prosecute this case since there have been at least two changes in the ownership of RU/DMI in the years since P&S last represented those entities. There also have been management changes, including Simon's departure and the termination of Dr. Ross.

I therefore find that the fact that Mr. Sclafani and his firm previously represented RU/DMI in connection with the lawsuits discussed above is not enough to meet DMI's heavy burden under the substantial relationship test.

In addition to the prosecution and defense of lawsuits, P&S also provided corporate and tax advice to RU/DMI. As Judge Leisure has noted, determining the substantiality of the relationship between two engagements of counsel "is more difficult . . . when the former representation entailed not litigation but general background legal work." United States Football League v. Nat'l Football League, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985). However, even in that context, "[i]t is the congruence of <u>factual</u> matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes." Id. at 1460 n.26 (emphasis in original). To prevail on the basis of such a former relationship, a movant therefore must show that "the later litigation puts in issue the entire background of the movant." Id. at 1459. "Thus, knowledge of a former client's financial and business background is not in itself a basis for disqualification if the client's background is not in issue in the later litigation." Id. at 1460.

In its complaint in this case, DMI alleges four specific wrongs. Of these, the only one that conceivably relates to the way in which RU/DMI generally conducts its business is the claim that AUA sought to misappropriate DMI's trade secrets. With respect to that claim, DMI contends that Weltman developed a proprietary computer

12

system for DMI, while he was its employee, and that AUA improperly sought to purchase a purloined copy of that system from him. (See Compl. ¶¶ 9-10, 36-45). However, Mr. Sclafani and his firm apparently had no involvement with any issues related to DMI's computer system, which may, in fact, have been developed after they ceased to represent RU.[4] (Sclafani Affirm. ¶¶ 69-73). DMI therefore has not shown that this suit puts in issue the "entire background" of DMI or RU during the period that Mr. Sclafani and his firm were serving as RU's general counsel.

Accordingly, notwithstanding the extensive services that P&S evidently provided to RU/DMI over the years, DMI has not shown, as it must, that there is a substantial relationship between the subject matter of this lawsuit and that prior representation.

### 3. Access to Privileged Information

The last element of the substantial relationship test relates to counsel's access to privileged information. Suffice it to say, DMI alleges, and Mr. Sclafani denies, that he and his firm received privileged information relevant to this case during the course of their prior representation of RU/DMI. There is no need to resolve this issue because DMI's motion to disqualify its former counsel fails at the second step of the "substantial relationship" analysis. It nevertheless bears mention that the disqualification of Mr. Sclafani and P&S, even if granted, would likely be a pyrrhic victory. Although one of

---

[4] In its reply papers, DMI does not suggest otherwise.

DMI's claims in this suit relates to an alleged breach of its employees' duty of loyalty, there has been no showing that Simon would be restricted in any way from disclosing to successor counsel the detailed information concerning RU and DMI that DMI alleges was furnished to Mr. Sclafani and P&S during the period that they represented RU/DMI.[5] Circumstances such as these raise the concern that the disqualification motion in this case has been interposed purely for tactical purposes.

III.   Conclusion

For the foregoing reasons, the motion filed by plaintiff DMI to disqualify Mr. Sclafani and his firm from further service as counsel for defendant Neal S. Simon (Docket No. 11) is denied.  Additionally, because this case is assigned to me for general pretrial supervision and has been on hold for several months, the Court will conduct a further pretrial conference in Courtroom 11C on July 23, 2005, at 10 a.m.  Counsel (and

---

[5]   In particular, DMI does not allege that Simon signed any sort of confidentiality agreement during the course of his employment at RU and DMI.  Moreover, while confidences may have been revealed to him while he served as RU's general counsel and was "of counsel" to P&S, an attorney who has been sued by his client may, in appropriate circumstances, reveal client confidences under the "self defense" exception to the attorney-client privilege.  See generally First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co., 110 F.R.D. 557, 566 (S.D.N.Y. 1986).

Mr. Weltman) are directed to confer prior to the conference in an attempt to agree on a proposed discovery schedule.

   SO ORDERED.

Dated:  New York, New York
     June 13, 2005

                _____
                   FRANK MAAS
                United States Magistrate Judge

Copies to:

Peter J. Mastaglio, Esq.
Cullen and Dykman LLP
Attorneys for Plaintiff
100 Quentin Roosevelt Blvd.
Garden City, New York 11530
Fax:   (516) 296-9155

Joshua Zuckerberg, Esq.
Pryor Cashman Sherman & Flynn LLP
Attorneys for Defendant AUA
410 Park Avenue
New York, New York 10022
Fax:   (212) 798-6379

Sol Weltman, Pro Se
3161 Brighton 6th Street
Apartment 6E
Brooklyn, New York 11235 (Via U.S. Mail)

Neil R. Flaum, Esq.
42 Broadway, Suite 1749
New York, New York  10004
Fax:   (212) 509-0740

Leonard A. Sclafani, Esq.
Polatsek and Sclafani
Attorneys for Defendant
Neal S. Simon
275 Madison Avenue
New York, New York 10016
Fax:   (212) 949-6310