UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOMINICA MANAGEMENT, INC., | 04 Civ. 7675 (RMB) (FM) |
| Plaintiff, | |
| - against - | **ANSWER, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT** |
| AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE, NEAL S. SIMON AND SOL WELTMAN, | |
| Defendants. | |
| AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE, | |
| Third-Party Plaintiff, | |
| - against - | |
| ROSS UNIVERSITY SCHOOL OF MEDICINE, | |
| Third-party Defendant. | |

Defendant American University of Antigua ("AUA"), by and through its counsel, Pryor Cashman Sherman & Flynn LLP, hereby responds to the complaint of plaintiff Dominica Management, Inc. ("DMI") (the "Complaint") and alleges as follows:

1.    Denies the allegations contained in paragraph "1" of the Complaint and leaves to the Court the determination of all questions of law.

2.    Denies the allegations contained in paragraph "2" of the Complaint and leaves to the Court the determination of all questions of law.

3.    Denies the allegations contained in paragraph "3" of the Complaint and leaves to the Court the determination of all questions of law.

4.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "4" of the Complaint.

5.      Denies the allegations set forth in paragraph "5" of the Complaint.

6.      Denies the allegations contained in paragraph "6" of the Complaint and leaves to the Court the determination of all questions of law.

7.      Denies the allegations set forth in paragraph "7" of the Complaint.

8.      Denies the allegations contained in paragraph "8" of the Complaint.

9.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "9" of the Complaint.

10.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "10" of the Complaint.

11.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "11" of the Complaint.

12.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "12" of the Complaint.

13.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "13" of the Complaint.

14.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "14" of the Complaint.

15.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "15" of the Complaint.

16.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "16" of the Complaint.

429639v4                                    2

17.     Denies the allegations set forth in paragraph "17" of the Complaint.

18.     Denies the allegations set forth in paragraph "18" of the Complaint.

19.     Denies the allegations contained in paragraph "19" and refers the Court to the writing referenced therein or the true meaning, terms, conditions and provisions thereof.

20.     Denies the allegations contained in paragraph "20" of the Complaint and leaves to the Court the determination of all questions of law.

21.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "21" of the Complaint.

22.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "22" of the Complaint.

23.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "23" of the Complaint.

24.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "24" of the Complaint.

25.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "25" of the Complaint.

26.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "26" of the Complaint.

27.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "27" of the Complaint.

28.     Admits the allegations set forth in paragraph "28" of the Complaint.

29.     Admits the allegations set forth in paragraph "29" of the Complaint.

30.     Admits the allegations set forth in paragraph "30" of the Complaint.

31.     Denies the allegations set forth in paragraph "31" of the Complaint and leaves to the Court the determination of all questions of law.

32.     Admits that Simon had access to the yearbook as a member of the general public.

33.     Admits that defendant American University of Antigua has caused to be published at various times documents that have been entitled American University of Antigua, College of Medicine Student Handbook, admits that, at various times, one or another of those documents has been available to the public on the website at auamed.org, and otherwise denies the allegations set forth in paragraph "33" of the Complaint.

34.     Admits that AUA has maintained, at various times, student handbooks that contain some of the rules and regulations for students attending the university and otherwise denies the allegations set forth in paragraph "34" of the Complaint.

35.     Denies the allegations contained in paragraph "35" of the Complaint.

36.     Denies the allegations set forth in paragraph "36" of the Complaint.

37.     Denies the allegations set forth in paragraph "37" of the Complaint.

38.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "38" of the Complaint.

39.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "39" of the Complaint.

40.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "40" of the Complaint.

41.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "41" of the Complaint.

42.     Denies the allegations contained in paragraph "42" of the Complaint and leaves to the Court the determination of all questions of law.

43.     Denies that defendant Weltman converted "proprietary software created for and utilized by DMI for use by defendant AUA" and otherwise lacks knowledge or information sufficient form a belief as to the truth of the allegations set forth in paragraph "43" of the Complaint.

44.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "44" of the Complaint.

45.     Denies the truth of the allegations set forth in paragraph "45" of the Complaint.

46.     Denies the truth of the allegations set forth in paragraph "46" of the Complaint.

47.     In response to paragraph "47" of the Complaint, repeats and realleges its responses to the allegations set forth in paragraphs "1" through "46" of the Complaint as if they were fully set forth herein.

48.     Admits that AUA and Simon has access to the 2002 Student Handbook as members of the general public and otherwise deny the allegations set forth in paragraph "48" of the Complaint.

49.     Admits the allegations set forth in paragraph "49" of the Complaint.

50.     Admits the allegations set forth in paragraph "50" of the Complaint.

51.     Denies the allegations set forth in paragraph "51" of the Complaint.

52.     Denies the allegations set forth in paragraph "52" of the Complaint.

53.     Denies the allegations set forth in paragraph "53" of the Complaint.

54.     Denies the allegations set forth in paragraph "54" of the Complaint.

55.     Denies the allegations set forth in paragraph "55" of the Complaint.

56.     Denies the allegations set forth in paragraph "56" of the Complaint.

57.     Denies the allegations set forth in paragraph "57" of the Complaint.

58.     In response to paragraph "58" of the Complaint, repeats and realleges the allegations set forth in paragraphs "1" through "57" of plaintiff's Complaint with the same force and effect as if they were set forth fully herein.

59.     Denies the allegations set forth in paragraph "59" of the Complaint and leaves to the Court the determination of all questions of law.

60.     Denies the allegations set forth in paragraph "60" of the Complaint.

61.     Denies the allegations set forth in paragraph "61" of the Complaint.

62.     Denies the allegations set forth in paragraph "62" of the Complaint.

63.     Denies the allegations set forth in paragraph "63" of the Complaint.

64.     Denies the allegations set forth in paragraph "64" of the Complaint.

65.     In response to paragraph "65" of the Complaint, repeats and realleges its responses to the allegations set forth in paragraphs "1" through "64" of the Complaint as if fully set forth herein.

66.     Denies the allegations set forth in paragraph "66" of the Complaint.

67.     Denies the allegations set forth in paragraph "67" of the Complaint.

68.     Denies the allegations set forth in paragraph "68" of the Complaint.

69.     Denies the allegations set forth in paragraph "69" of the Complaint.

70.     Denies the allegations set forth in paragraph "70" of the Complaint.

71.     In response to paragraph "71" of the Complaint, repeats and realleges its responses to the allegations set forth in paragraphs "1" through "70" of the Complaint as if fully set forth herein.

72.      Denies the allegations set forth in paragraph "72" of the Complaint.

73.      Denies the allegations set forth in paragraph "73" of the Complaint.

74.      Denies the allegations set forth in paragraph "74" of the Complaint.

75.      Denies the allegations set forth in paragraph "75" of the Complaint.

76.      Denies the allegations set forth in paragraph "76" of the Complaint.

77.      Denies the allegations set forth in paragraph "77" of the Complaint.

78.      In response to paragraph "78" of the Complaint, repeats and realleges its responses to the allegations set forth in paragraphs "1" through "77" of the Complaint as if fully set forth herein.

79.      Denies the allegations set forth in paragraph "79" of the Complaint.

80.      Denies the allegations set forth in paragraph "80" of the Complaint.

81.      Denies the allegations set forth in paragraph "81" of the Complaint.

82.      In response to paragraph "82" of the Complaint, defendant repeats its responses to the allegations set forth in paragraphs "1" through "81" of the Complaint as if fully set forth herein.

83.      Denies the allegations set forth in paragraph "83" of the Complaint.

84.      Denies the allegations set forth in paragraph "84" of the Complaint.

85.      Denies the allegations set forth in paragraph "85" of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

86.      The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

87.      This Court lacks jurisdiction over the subject matter of this action.

### THIRD AFFIRMATIVE DEFENSE

88.     The Complaint is barred, in whole or in part, by the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE

89.     The Complaint is barred, in whole or in part, by the doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE

90.     The Complaint is barred, in whole or in part, by plaintiff's unclean hands.

### SIXTH AFFIRMATIVE DEFENSE

91.     Plaintiff lacks standing to assert the claims stated in the Complaint.

### SEVENTH AFFIRMATIVE DEFENSE

92.     Plaintiff's claims are barred by the applicable statutes of limitations.

### EIGHTH AFFIRMATIVE DEFENSE

93.     Plaintiff's Copyright Claim is barred because those elements and/or portions of plaintiff's works which defendants allegedly infringed do not constitute subject matter protected by the United States Copyright Act, by any other statute of the United States or any state thereof, or by common law.

### NINTH AFFIRMATIVE DEFENSE

94.     Plaintiff's claim for copyright infringement is barred because any alleged use of any portion of plaintiff's alleged copyrighted works was de minimis and/or immaterial and thus, does not constitute copyright infringement.

### TENTH AFFIRMATIVE DEFENSE

95.     Plaintiff's claim for copyright infringement is barred because any alleged use of plaintiff's alleged copyrighted works was a fair use pursuant to 17 U.S.C. § 107.

## ELEVENTH AFFIRMATIVE DEFENSE

96.     Plaintiff's claim for copyright infringement is barred because plaintiff's alleged copyright registration does not cover the material allegedly infringed.

## TWELFTH AFFIRMATIVE DEFENSE

97.     Plaintiff's claim for copyright infringement is barred because defendants' alleged copying of plaintiff's handbook does not amount to an unlawful appropriation.

## THIRTEENTH AFFIRMATIVE DEFENSE

98.     Plaintiff's claim for copyright infringement is barred because there is no substantial similarity between plaintiff's handbook and defendant AUA's handbook.

## FOURTEENTH AFFIRMATIVE DEFENSE

99.     Plaintiff's claims for misappropriation of trade secrets and confidential information is barred because defendant never obtained or used plaintiff's allegedly proprietary information.

## FIFTEENTH AFFIRMATIVE DEFENSE

100.    Plaintiff's claims for misappropriation of trade secrets and confidential information is barred because the computer system and other purportedly confidential information at issue is not plaintiff's property or not a bona fide trade secret.

## SIXTEENTH AFFIRMATIVE DEFENSE

101.    Plaintiff's claims for misappropriation of trade secrets and confidential information is barred because plaintiff has taken no steps to protect the confidentiality of its purported trade secrets or confidential information.

## SEVENTEENTH AFFIRMATIVE DEFENSE

102.   Plaintiff's claims for misappropriation of trade secrets and confidential information are barred because plaintiff has not suffered any damages attributable to defendants' alleged misappropriation.

## EIGHTEENTH AFFIRMATIVE DEFENSE

103.   Plaintiff's claim for aiding and abetting a breach of the duty of loyalty is barred because defendants had no actual or constructive knowledge of a duty that former defendant Weltman owed to plaintiff and breached.

## NINETEENTH AFFIRMATIVE DEFENSE

104.   Plaintiff's claim for aiding and abetting a breach of the duty of loyalty is barred because defendants did not knowingly participate in a breach by Weltman of his duty of loyalty.

## TWENTIETH AFFIRMATIVE DEFENSE

105.   Plaintiff's claim for aiding and abetting a breach of the duty of loyalty is barred because plaintiff has suffered no damages attributable to Weltman's alleged breach of his duty of loyalty and/or defendants' alleged aiding and abetting of said alleged breach.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

106.   Plaintiff's claim for unjust enrichment is barred because defendants never purchased or used any allegedly proprietary and/or confidential material belonging to plaintiff.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

107.   Plaintiff's claim for unfair competition is barred because defendants never misappropriated or exploited any allegedly confidential and/or proprietary material belonging to plaintiff.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

### COUNT I

1.      Counterclaimant AUA is an educational institution located on the island nation of Antigua.

2.      Upon information and belief, counterclaim defendant DMI is a corporation organized under the laws of New York with its principal office located at 499 Thornall Street, 20th Floor, Edison, New Jersey 08837.

3.      Third-party defendant Ross University School of Medicine ("Ross") is an educational institution located on the island nation of Dominica.

4.      This Court has supplemental and pendent jurisdiction over the counterclaims and third-party claims asserted by AUA herein based on 28 U.S.C. § 1367 as they are so related to plaintiff's claims that they form part of the same case or controversy and arise from the same common nucleus of operative facts, and also pursuant to 15 U.S.C. § 1, et seq.

5.      AUA is a fledgling medical school located on the Caribbean island of Antigua that enrolled its first class of medical students in 2004.   AUA's current enrollment is approximately 250 medical students.   AUA employs approximately twenty physicians as full-time faculty.

6.      DMI is a management company owned by DeVry, Inc., a large public corporation with a market capitalization of almost $1.5 billion, which acts as a manager of Ross, which DeVry also owns through wholly-owned subsidiaries and controls in all material respects.   Ross and DMI are referred to collectively herein as "Ross."

7. Ross is a medical school located on the island of Dominica, West Indies. It was founded in 1978 and has a current enrollment of approximately 1,700 medical students. Ross employs approximately fifty full-time faculty.

8. Ross conducts extensive business in New York City.

9. Since AUA's inception in 2003, Ross has embarked upon a pattern of unlawful conduct designed to stifle and undermine AUA's ability to compete with it.

10. AUA, like other international medical schools, including Ross, has divided its program into two parts, one of which consists of a two-year clinical clerkship at United States teaching hospitals and other medical facilities.

11. New York State is the most popular destination in the United States for medical students seeking to complete a clinical rotation. In New York State, there are only approximately twenty hospitals which accept medical student clinical clerkships from international medical schools like AUA and Ross. Ross places its medical students in over 90% of the teaching hospitals in New York State that accept international medical school students.

12. New York State requires that all medical school students providing services at a New York hospital be supervised by a physician who is on the faculty of the medical student's medical school. That is, when Ross places its medical students at a New York hospital, those students must be supervised by hospital physicians staff who are on the faculty of Ross. To satisfy that regulation, Ross appoints the particular physician at the hospital to its faculty. Thus, a physician at a New York teaching hospital may technically be on the faculty of numerous medical schools, although he may never set foot on their campuses.

13. Upon information and belief, at any given time, Ross has in place approximately 500 of its medical students in the teaching hospitals of New York State that offer international

429639v4                                    12

medical school clinical clerkships, all of which employ physicians who are appointed to Ross's faculty.

14.     Upon information and belief, Ross pays those hospitals approximately $350 per week per student, or $18,200 per year per student, to allow their students to intern there. In total, Ross is remitting to New York area hospitals approximately nine million dollars per year for the privilege of having those hospitals' physicians teach Ross's students.

15.     Upon information and belief, beginning in or around early 2004, when AUA was first seeking to place its medical students with New York State teaching hospitals, Ross sought to stifle that competition by promulgating a policy whereby it directed that any physicians who had been appointed to its faculty could not be on the faculty of any other international medical school, such as AUA, without its consent. Ross's policy was designed to stifle and undermine the ability of AUA to place interns in New York hospitals because, in practice, upon information and belief, Ross freely consented to physicians's requests to be on the faculty of schools other than AUA. Thus, Ross deliberately targeted AUA because AUA was in direct competition with it.

16.     Ross's policy had the immediate effect of curtailing the ability of AUA to compete with Ross in the placement of medical students in New York internships. Ross's policy threatens hospitals that have accepted Ross students and whose physicians have been appointed to Ross's faculty with the loss of their lucrative financial relationship with Ross if they seek to initiate a new relationship with AUA.

17.     Upon information and belief, Ross's policy has caused at least three different hospitals, Brookdale Hospital, Queens Hospital, and Jamaica Hospital, to reject AUA medical student interns out of a concern that such an acceptance would cause Ross to withdraw its

429639v4                                        13

medical student interns from those institutions and to discontinue payments to them.

18.     Upon information and belief, due to its size and the fact that it·has in place approximately 500 of its medical students in New York hospitals at any given time, Ross maintains monopoly power, as that term is defined at Section 2 of the Sherman Act, 15 U.S.C. § 2, over the market for the placement of international medical students in the New York State medical·schools.

19.     Ross's execution of its policy of preventing physicians appointed to its faculty to accept appointments to the faculty of other schools without its consent is intended to maintain and perpetuate that monopoly power.

20.     Ross's unlawful maintenance of its monopoly power is causing injury to AUA by limiting AUA's ability to compete in the market.

21.     As a result of Ross's unlawful maintenance of its monopoly power in violation of section two of the Sherman Act, 15 U.S.C. §2, AUA has suffered damages in an amount to be determined at trial, but in no event less than $1,000,000.

## COUNT II

22.     AUA repeats and realleges the allegations set forth in paragraphs "1" through "21" above as if fully set forth herein.

23.     Ross's conduct in preventing its medical staff from affiliating with other international medical schools is an act of predatory and anti-competitive behavior.

24.     Ross's conduct in this regard is done with an intent to monopolize and there exists a dangerous probability of Ross achieving such monopoly power.

25.     As a result of Ross's unlawful predatory and anticompetitive behavior, AUA has been damaged in an amount to be determined at trial, which amount is not less than $1,000,000.

429639v4                                    14

## COUNT III

26.    AUA repeats and realleges each and every allegation set forth in paragraphs "1"
through "25" above as if fully set forth herein.

27.    Ross's attempt to prevent physicians from affiliating themselves with AUA was
done with the intent to interfere with AUA's present or potential commercial relationship with
New York area hospitals.

28.    Ross's policy served no legitimate purpose and was intended solely to damage
AUA.

29.    Upon information and belief, Ross's policy has caused at least three New York
hospitals to refuse to enter into a relationship with AUA.

30.    As a result of Ross's tortious interference with AUA's prospective economic
advantage, AUA has been damaged in an amount to be determined at trial, but in no event less
than $1,000,000.

31.    Ross's conduct was undertaken with a willful and wanton intent, entitling AUA to
punitive damages of not less than $100,000.

## COUNT IV

32.    AUA repeats and realleges its allegations contained in paragraphs "1" through
"31" above as if fully set forth herein.

33.    Any medical school receiving Title 4 funds has an obligation to provide promptly,
upon request, a transcript to a student who has paid his or her tuition and fees.

34.    The purpose of that requirement is to enable a student to obtain loans in a timely
fashion so that he or she may meet tuition and living expenses.

35.    Starting in or around May of 2004, when AUA was seeking to attract students,

429639v4                                    15

Ross failed and refused timely to deliver to AUA academic transcripts of students who either intended to transfer from Ross to AUA or already had transferred from Ross to AUA, in an effort to prevent AUA from enrolling those students and to defer students from seeking to transfer to AUA.

36.     Ross's practice of withholding transcripts prevented those students from receiving government-sponsored financial aid on a timely basis because all financial aid programs require the submission of academic transcripts.

37.     In a number of instances, students transferring from Ross to AUA were wrongfully deprived of their transcripts for an entire semester, which prevented those students from obtaining financial aid.  In addition to imposing unnecessary hardship on those students, Ross's deliberate conduct has injured AUA by preventing transfer students from obtaining loan funds with which to make timely payment to AUA of the requisite tuition costs.  Additionally, upon information and belief, given the free exchange of information among international medical school students, the hardships suffered by those transfer students due to Ross's refusal to timely deliver transcripts is well known.  On further information and belief, numerous students have refrained from transferring to AUA due to Ross's failure and refusal timely to deliver academic transcripts.

38.     Ross's conduct, in wrongfully withholding transcripts, was without any legitimate business purpose and was done with the intent of interfering with AUA's prospective or current relationships with its students.

39.     As a result of Ross's tortious interference with AUA's prospective economic

429639v4                                     16

advantage, AUA has been damaged in an amount to be determined at trial, which amount is not less than $1,000,000.

40.    Ross's conduct was undertaken with a willful, malicious intent and, as such, AUA is entitled to punitive damages in an amount not less than $100,000.

## COUNT V

41.    AUA repeats and realleges the allegations set forth in paragraphs 1 through 40 above as if fully set forth herein.

42.    Ross had a duty to provide academic transcripts and its conduct of refusing to forward academic transcripts is a violation of federal law and regulation and intentional infliction of harm to AUA, and is done without any legitimate business purpose.

43.    As a result of Ross's prima facie tort, AUA has been damaged in an amount to be determined at trial, which amount is not less than $1,000,000,

44.    Ross's conduct was undertaken with a willful, malicious purpose and, as such, AUA is entitled to punitive damages in an amount not less than $100,000.

## COUNT VI

45.    AUA repeats and realleges the allegations set forth in paragraphs 1 through 44 above as if fully set forth herein.

46.    In or around 2002, Neal Simon, then President of Ross, and Evan Angelakis, then Provost of Ross, were filmed by Ross for the purposes of a video promoting Ross.

47.    In the video, Simon and Angelakis are depicted as the President and Provost, respectively, of Ross and both provide endorsements of Ross.

429639v4                                         17

48.     Simon and Angelakis left their employment with Ross in or around the spring of 2003, and both are now officers of AUA, which is in direct competition with Ross.

49.     Although both Angelakis and Simon were no longer Ross employees, Ross continued to show and distribute the video in New York State and throughout the United States, representing that Angelakis and Simon were still officers of Ross and still endorsed Ross. Those representations were false and Ross knew they were false as and when they were made.

50.     In fact, subsequent to the making of the video, Simon and Angelikos terminated their employment with Ross, the ownership of Ross changed hands at least twice, Ross underwent a substantial corporate reorganization, and both Angelikos and Simon withdrew their endorsement of Ross. In or January of 2005, Simon instructed Ross to cease using his image in the video for that reason. Ross nonetheless continued to distribute the video containing the representations of Simon and Angelakis, which Ross was on notice were no longer true. Ross continued to show the video knowing that it was no longer true precisely because Simon and Angelikos were officers of its competitor, AUA.

51.     Because neither Simon nor Angelakis currently endorse Ross, Ross's distribution of the video amounts to a misrepresentation under United States Education Law 20 USC § 1094(c)(3), 34 CFR § 668.71, 72, and all other applicable laws and regulations.

52.     As a result of Ross's tortious conduct in this regard, AUA has been damaged in an amount to be determined at trial, which amount is not less than $1,000,000.

## COUNT VII

53.     AUA repeats and realleges the allegations set forth in paragraphs "1" through "52" above as if fully set forth herein.

54.     In or around November of 2005, AUA entered into a written contract of employment with Dr. Birgit Nardel ("Dr. Nardel").

55.     Dr. Nardel was a pharmacology professor who previously had taught at Ross and who, at the time of entering the contract, was teaching part time at Ross.

56.     According to the contract, Dr. Nardel was to commence teaching at AUA when her teaching duties at Ross had ended.

57.     When Ross discovered that Dr. Nardel had entered into the contract with AUA, they defamed AUA by telling Dr. Nardel that AUA had an inferior program that was failing and would not survive, and encouraged and induced Dr. Nardel to breach her contract with AUA.

58.     Dr. Nardel cancelled her contract with AUA in or around January of 2005, immediately prior to the date she was scheduled to begin her employment with AUA.

59.     Dr. Nardel's breach of the contract caused AUA injury because it was forced to hire a replacement professor for a greatly increased salary.

60.     As a result of Ross's tortious interference with contract, AUA is entitled to damages in an amount to be determined at trial, which amount is not less than $500,000.

## COUNT VIII

61.     AUA repeats and realleges the allegation set forth in paragraphs "1" through "60" above as if fully set forth herein.

62.     In its effort to induce Dr. Nardel to breach her contract with AUA, Ross published various defamatory statements about AUA to Dr. Nardel, including but not limited to, its claim that AUA had an inferior program that was failing and would not survive.

63.     Said statements were false and Ross made those statements with malice and knowledge of their falsity.

429639v4                                          19

64.     The statements made by Ross caused Dr. Nardel to breach her agreement with AUA. Dr. Nardel's breach of her agreement caused injury to AUA.

65.     As a result of the defamatory statements made by Ross, AUA is entitled to damages in an amount to be determined at trial, which amount is not less than $1,000,000.

WHEREFORE, AUA requests that this court dismiss plaintiff's Complaint in its entirety, and enter judgment in AUA's favor as follows:

    a)    On the first and second counts (anti-trust violations), in favor of AUA and against Ross in an amount to be established at trial, but believed to be in excess of $1 million, fees, costs, and other applicable remedies provided by statute;

    b)    On the third count (tortious interference with prospective economic advantage), in favor of AUA and against Ross in an amount to be established at trial, but believed to be in excess of $1 million, fees, costs, and other applicable remedies provided by statute;

    c)    On the fourth count (tortious interference with prospective economic advantage), in favor of AUA and against Ross in an amount to be established at trial, but believed to be in excess of $1 million and punitive damages not less than $100,000;

    d)    On the fifth count (prima facie tort), in favor of AUA and against Ross in an amount to be established at trial, but believed to be in excess of $1 million and punitive damages not less than $100,000;

    e)    On the sixth count, in favor of AUA and against Ross in an amount to be established at trial, but believed to be in excess of $1 million;

    f)    On the seventh count (tortious interference with contract), in favor of AUA and against Ross in an amount to be established at trial, but believed to be in excess of $500,000;

    g)    On the eighth count (defamation), in favor of AUA and against Ross in an amount to be established at trial, but believed to be in excess of $1 million; and

    h)    Interest, costs, disbursements, attorneys' fees, and such other, further and different relief as this Court may deem just and proper.

DATED:      New York, New York
            August *12*, 2005

                              PRYOR CASHMAN SHERMAN & FLYNN LLP

                     By:    _James S. O'Brien, Jr._
                            James S. O'Brien, Jr.
                            410 Park Avenue,
                            New York, New York 10022

                            *Attorneys for Defendants*
                            *American University of Antigua*

429639v4                         21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOMINICA MANAGEMENT, INC.,

                              Plaintiff,

    - against -

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE, NEAL S. SIMON AND
SOL WELTMAN,
                              Defendants.

———————————————————————

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE,

                              Third-Party Plaintiff,

    - against -

ROSS UNIVERSITY SCHOOL OF MEDICINE,

                              Third-party Defendant.

STATE OF NEW YORK      )
                       )        ss.:
COUNTY OF NEW YORK     )

         Lauren R. Haley, being sworn, deposes and says that I am over 18 years of age, reside in Nassau County, New York and am not a party to this action.

         On August 12, 2005, I served Third-Party Defendant Ross University School of Medicine's Answer, Counterclaims and Third-Party Complaint upon:

                    Peter J. Mastaglio, Esq.
              Cullen and Dykman Bleakley Platt LLP
                  100 Quentin Roosevelt Blvd.
                  Garden City, New York  11530

by depositing true copies, enclosed in post-paid wrappers, in an official depository, under the exclusive care and custody of the United States Postal Service, addressed to the addresses designated by them for such purpose.

Sworn to before me this
12th day of August, 2005.

_____
        Notary Public

                                        _____
                                               Lauren R. Haley

STEPHEN B. RODNER
Notary Public, State of New York
No. 31-3319425
Qualified in New York County
Commission Expires March 30, 2007

427360v1